## DETERMINED BY THE

# SUPREME COURT OF APPEALS

## OF

# WEST VIRGINIA.

### CHARLESTON

MORRIS *v.* BAIRD *et als.*

Submitted June 13, 1912.   Decided February 11, 1913.

1. CREDITORS' SUIT—*Rent of Land—Coal in Place.*
   The general rule requiring that a judgment debtor's lands be rented, if the same will rent for sufficient in five years. to pay his debts, is inapplicable to coal in place owned by him, and having no rental value. (p. 2).

2. INTEREST—*Rate—Effect of Contract.*
   It is error to decree interest at six per cent. when the notes: or other contracts evidencing the debts bear a less rate of interest. (p. 3).

3. DEEDS—*Construction—Interest Conveyed.*
   A deed which purports to convey part of a larger tract, but: which does not attempt to locate the part conveyed, should be construed as conveying an undivided interest in the larger tract. Such deed is not void for uncertainty. (p. 4).

4. VENDOR AND PURCHASER—*Property Subject to Execution—Undivided Interest—Mode of Sale.*
   Where undivided interests in a larger tract, composed of numerous tracts each subject to a prior vendor's lien, are so conveyed, and it is impracticable in selling the larger tract, or the several tracts composing it, for the purchase money liens thereon, to respect such undivided interests, it is not error to order the tract or tracts sold as an entirety to satisfy

such vendor's liens, though not subject to the judgment liens decreed against other lands of the debtor, and leave the subsequent alienees to take their interests out of the proceeds remaining after payment of such vendor's liens. (p. 5).

5.  SAME.

And where such undivided interests in a larger tract, composed of numerous tracts, so conveyed, are subject to such prior vendor's liens and to the liens of prior judgments and attachments, and it is impracticable to sell the land or interests therein in the inverse order of alienation, or to sell first the interests of the debtor therein without detriment to all other interests, it is not error to decree a sale of the entire tract, leaving such alienees to take their interests out of the surplus funds, if any. (p. 6).

Appeal from Circuit Court, Doddridge County.

Suit by Tusca Morris against William F. Baird and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

*Millard F. Snider* and *Homer Strosnider*, for appellants.

*Neely & Lively* for Tusca Morris, appellee, and *J. Ramsey,* for C. S. Parr, appellee.

MILLER, JUDGE:

In a judgment creditors suit to subject the coal owned by the debtor in fee, the first point of error in the decree below which we are called upon to consider is that, as the judgment debtor in his answer, filed on the eve of pronouncing the final decree, disclosed, for the first, that he was the owner when suit was brought of 800 acres of coal in Tyler County, in addition to the 6400 acres in Doddridge County reported by the commissioner, and adjoining it, the court should have required plaintiff to amend his bill so as to bring in that coal, and then, as a condition precedent to decreeing a sale of the coal in Doddridge County, have ascertained whether all the coal would rent for sufficient in five years to pay the debts, and if so, to decree that the same be rented and not sold.

We see no merit in this point. The main portion of the indebtedness decreed is for purchase money on the very coal decreed to be sold, and on which vendor's liens were retained.

Section 7, of chapter 139, relating to the enforcement of judgment liens is inapplicable to the enforcement of vendor's liens. But treating this as strictly a suit to enforce judgment liens, the point is still without merit. The rule relied on, laid down in *Newlon* v. *Wade*, 43 W. Va. 283, *Kane* v. *Mann*, 93 Va. 239, and enunciated in Hogg's Eq. Pr., §458, is clearly inapplicable to a suit to subject to sale coal in place to pay judgment liens. That rule, as a reading of the authorities relied on and a history of the statute referred to on which it is based will show, is applicable only to land which has a rental value, as for farming, grazing, or other occupancy, and not to coal, or oil, or gas in place, which we judicially know can have no rental value. No one would rent these minerals in place, on any terms, that did not involve the taking of the very substance of the inheritance. Such a renting would amount to a sale of the land (coal) itself, which would be wholly incongruous with the purposes of the statute. This incongruity is so apparent that we think no further elaboration of the question, or citation of authority is required.

The next assignment of error deserving consideration is that six per cent. interest is decreed on certain debts, when by the note or contracts they bear only five per cent. These creditors, and appellees, at once concede this error, and the following authorities cited seem to fully support the proposition. *Pickens* v. *McCoy*, 24 W. Va. 344; *Brooke* v. *Roane*, 1 Call. 205; *Vent* v. *Patten*, 1 Rand. 25; *Shipman* v. *Bailey*, 20 W. Va. 140; *Cecil* v. *Hicks*, 29 Grat. 1; *Bank of Marietta* v. *Pindall*, 2 Rand. 465. But appellees contend that these errors, not having been called to the attention of the court below by exceptions to the commissioner's report, or otherwise, do not constitute reversible error, but error which may and should be corrected here by section 6, chapter 134, Code 1906, and if no other error be found therein, the decree should be affirmed. We think this a proper construction of the statute. But as we have found no other error in the decree prejudicial to appellants, and to make the corrections here would require many calculations of interest, with which the time of the court ought not to be consumed, we are disposed to order the error corrected in the lower court and when the decree is so amend-

ed there, that it stand affirmed. Appellants need not have come to this court to correct this error in the first instance.

The next point of error which we will notice is that the court erroneously decreed the sale of the alleged interests of Lydia M. Oaks, and Oliver P. Markle and Isadore Frank, in 2447.951 acres known as the "Salem Syndicate" coal, when the judgments and attachments decreed were subsequent in date to the deeds conveying those interests, and which were not subject to said liens. As already noted, the debts decreed are in the main for purchase money. But this fact may not be important. A pertinent inquiry is, what is the nature or character of the estates or interests which these appellants took by their deeds from Baird? The deed to Lydia M. Oaks, purports to "grant, with general warranty, unto the said party of the second part, her heirs and assigns, all the undivided thirty (30) acres of the Pittsburg vein or stratum of coal with the mining rights, privileges and other rights, etc.; situate in Doddridge County, West Virginia, * * * in a field of coal known as tract No. 2 of the Salem Syndicate as was conveyed to W. F. Baird by the following recited deeds," some sixteen in number. A later clause, further descriptive of the coal, says: "The tract herein conveyed is an undivided interest in tract No. 2 of the Salem Syndicate, containing 30 acres, which is a part of the same tract of land which has been conveyed to the said W. F. Baird by deeds aforesaid." The deed from Baird to Markle and Frank purports to grant "all the undivided two hundred (200) acres of the Pittsburg vein or stratum of coal" in the same "Salem Syndicate," conveyed to Baird by the deeds recited in the deed to Lydia M. Oaks. A later clause is as follows: "The tract of coal herein conveyed is an undivided 200 acres, being a part of the same tract of coal which has been conveyed to the said W. F. Baird by deeds aforesaid." The deed from Baird to L. Louisa and Margaret F. Hamilton, purports to convey "all the undivided seventy five (75) acres" of said coal by substantially the same language as the deed to Markle and Frank.

The decree appealed from, as we interpret it, adjudges that Lydia M. Oaks by her deed took a 30/2447.951 undivided inter-

est; L. Louisa and Margaret F. Hamilton a 75/2447.951 undivided interest; and Markle and Frank by their deed a 200/-2447.951 undivided interest in said Salem Syndicate, comprising sixteen several tracts or parcels of land, and that Baird held the remaining undivided interest therein.

Appellees contend that these deeds are void for uncertainty, and rely on 4 Am. & Eng. Ency. Law 802, and *Shackleford* v. *Bailey,* 35 Ill. 387. We think the court properly interpreted these deeds, however, for reasons to be given. The authorities seem almost unanimous in holding that a deed which conveys part of a larger tract, but which does not locate the part conveyed should be construed as conveying an undivided interest in the larger tract, distingushing deeds of that class from those which attempt to describe a specific portion, designating the number of acres, and as a part of the larger tract, but the calls of which do not describe the tract intended to be conveyed, and held void for uncertainty. Some cases distinguish deeds of the former class also from the deeds which by other descriptions the grantees are held to take the interests conveyed as tenants in common. 2 Devlin on Deeds, §1019; 13 Cyc. 655, citing among many other cases, *Buchanan* v. *King,* 22 Grat. 414, Anno. Ed. 154; 1 Jones on Real Prop. §404, and numerous cases cited in notes. All our cases, so far as we have observed, fall within the distinguished class above referred to. See *Smith* v. *Peterson,* 71 W. Va. 364, 76 S. E. 804; *Reger* v. *McAllister,* 70 W. Va. 52; *Harding* v. *Jennings,* 68 W. Va. 354; *Oil Co.* v. *McCormick, Id.* 605, and *Crawford* v. *Workman,* 64 W. Va. 10, and cases cited.

Such being the interests of these appellants what rule should govern in ordering a sale, particularly with respect to the undivided interests of Oaks, and Markle and Frank, not subject to the liens of the judgments and attachments decreed? The whole of Baird's original interests in the several tracts comprising the Salem Syndicate No. 2, are subject to purchase money liens aggregating amounts exceeding the prices likely to be obtained at a judicial sale thereof. An attempt to sell Baird's undivided interests would likely affect injuriously those interests, for they would not

likely sell to as . good advantage when sold separately as if
sold as a whole.  True the interests of these alienees are not sub-
ject to the liens of the judgments and attachments recovered
subsequently, but they are subject to the purchase money liens,
and, if necessary to satisfy those liens, the whole of the coal,
subject thereto, will necessarily have to be sold to satisfy the
same.  As noted, sixteen different tracts are involved, subject to
distinct purchase money liens on each.  How would it be prac-
ticable to respect the undivided interests of appellants in a sale
of these tracts separately, as they have been decreed and must
be sold?  It may be said that the interest of Baird in each tract
might be first sold or offered for sale, and if necessary, then to
sell the whole.  This is the only possible way we can conceive
in which it might be done.  But would this manner of sale likely
result satisfactorily?  Some of the tracts are small, and if the
interests of Baird should sell for enough to pay a particular
lien on the several tract very insignificant portions would be
partible among appellees.  Related as these interests are we
think the only practicable way to partition them is to sell the
whole, and if more than sufficient is realized to pay the prior
liens let these alienees take their shares in the proceeds of sale.
The point of error should be overruled.

   Lastly, it is said that even if the interests of the Markle, Frank,
Oaks, and the Hamiltons could be sold, as decreed, it was error
not to have decreed that Baird's interests be first sold, and then
if they should not sell for sufficient to pay the prior debts to sell
the interests of the subsequent alienees.  Section 8, of chapter
139, Code 1906, and *Handly* v. *Sydenstricker*, 4 W. Va. 605, and
*McClaskey* v. *O'Brien*, 16 W. Va. 791, are cited and relied on in
support of this proposition.  Much of what has been said in dis-
posing of the last preceding assignment of error is applicable
here.  The section of the statute referred to, relating to the en-
forcement of judgment liens, as does a corresponding statute of
Virginia, provides that "Where the real estate liable to the lien
of a judgment is more than sufficient to satisfy the same, and it,
or any part of it, has been aliened, as between the alienees for
value, that which was aliened last shall, in equity, be first liable,

and so on with the other successive alienations until the whole judgment is satisfied. And as between alienees who are volunteers under such judgment debtor, the same rule as to the order of liability shall prevail. But any part of such real estate retained by the debtor himself shall be first liable to the satisfaction of the judgment." This statute is little more, if anything, than declaratory of an old and well settled rule of equity, applied not only in the enforcement of judgment liens, but also in suits to enforce mortgages and deeds of trust. *Clark* v. *Timber Co.,* 70 W. Va. 312, 315, and cases cited. In Virginia a recent case construing the statute holds that if an alienee intends to rely on this rule he should allege in his answer, or establish by proof, that the real estate liable to the liens is more than sufficient to satisfy the same. *Bank* v. *Preston,* 97 Va. 222, 226. The fact is alleged in the answers of the several alienees in this case; but to each of these answers there is a general replication, and there is no proof of the fact. But we doubt the construction of the Virginia court. We are disposed to hold that the statute as well as the old rule in equity confers a substantial property right, and that in all cases, where it has practical application, the rule ought to be adhered to. But where, as in this case, it can not be applied so as to do equity as between all the parties, and where undivided interests have been conveyed in numerous tracts, and those interests are so small as to render it practically impossible of execution the rule should not be applied. Such an exception to the general rule finds support, we think, in 2 Jones on Mort., §1582, and cases cited.

A point of error, plainly a clerical error, in drafting the decree is made upon behalf of Sheridan R. Griffin and Michael A. Brast. The commissioner reported due each of them, $16,902.67, purchase money, for which the vendor's lien was retained on coal conveyed to Baird. There was no exception to the commissioner's report on this finding. In drafting the decree appealed from they were decreed jointly, instead of each, the sum of $16,902.67. We are of opinion the decree should be corrected in this respect, also, making it read that Griffin and Brast each recover the sum of $16,902.67, with interest as recited in said decree. And as thus

corrected and after it has also been corrected in other particulars herein directed, that the decree stand affirmed.

*Affirmed.*