# CHARLESTON.

WATSON-LOY COAL CO. v. MONROE COAL MINING CO.

Submitted February 10, 1920.   Decided March 2, 1920.

1. DEEDS—*Effect as Merging Prior Agreements Stated.*

   In so far as a deed varies from a prior executory contract pursuant to which it is executed, such departure is presumed to represent a change mutually agreed upon by the parties before its execution. In such form it represents the final act of the parties, and merges in it all antecedent agreements, negotiations and conversations, and is conclusive in the absence of a showing that the variance is due to fraud or mutual mistake. (p. 647).

2. REFORMATION OF INSTRUMENTS—*Proof to Correct Variance From Executory Contract Must be Clear and Convincing.*

   To warrant reformation of such a deed to conform with an executory contract, evidence that the variance was due to fraud or mutual mistake must be clear and convincing. (p. 647).

3. Corporations—*Right to Sue in Corporate Name After Conveyance of Entire Property Stated.*

> Where a corporation by deed conveys to another all of its property, real and personal, together with all of its capital stock, but reserves the privilege of using its corporate name for the purpose of bringing any suit necessary or proper to enforce rights reserved by the deed, it may properly institute such a suit in its corporate name without joining as parties the stockholders of record at the date of the deed or indicating that it is a suit for their use. The retention of the corporate name for such purpose is in substantial conformity with the provisions of section 59, ch. 53, Code. (p. 650).

4. Interest—*Interest in Judgment on Note to be Allowed as Fixed by Contract.*

> Where a note by its terms bears interest at a rate less than 6 per cent per annum, a decree for payment of the aggregate sum due thereon, including principal and interest at the specified rate to the date of the decree, should provide for payment of interest at the same rate upon the sum so ascertained from the date of the decree till paid; and a decree which uses the indefinite phrase "with interest thereon," not indicating the rate, will be modified so as to specify the rate fixed by the contract. (p. 652).

5. Costs—*Award to be Made to Party Substantially Prevailing.*

> Costs are awarded to the party who substantially prevails in this court. (p. 652).

Appeal from Circuit Court, Mineral County.

Suit by Watson-Loy Coal Company against Monroe Coal Mining Company. Decree for plaintiff, and defendant appeals.

*Modified and affirmed.*

*Wm. MacDonald, Henry S. Dricker, Jr.,* and *E. H. Sincell,* for appellant.

*Emory Tyler,* for appellee.

Lynch, Judge:

On July 9, 1902, Watson-Loy Coal Company conveyed to Monroe Coal Mining Company, West Virginia corporations, coal properties located in part in Mineral County, this state, and in part in Garrett County, Maryland, separated only by the North Branch of the Potomac River, and at that time owned and operated by the grantor; including buildings and mining

equipment, and the shares of stock of the grantor, and other personal property belonging to it; "it being the true intent and meaning of these presents to sell and convey to the said party of the second part  *  *  *  all the property, both real and personal, belonging to the said party of the first part," with certain unimportant exceptions. In the deed the grantor retained a lien to secure the payment of the unpaid residue of the consideration, amounting to $50,000, for which defendant executed four notes payable respectively June 2, 1903, 1904, 1905 and 1906, with interest payable annually at the rate of 5% from June 2, 1902, the date the preliminary oral agreement for the transfer was made. These installments defendant paid as and when they became due except the fourth, and the interest on it to June 2, 1905. To enforce a sale of the land in satisfaction of the balance of the principal and interest due on the last note is the purpose of this suit; and the right to this relief defendant controverts because of alleged defects in the title of the properties conveyed.

By one of the assignments defendant below, now appellant, complains of the noncompliance of the deed with the preliminary written contract between the parties, dated June 10, 1902, pursuant to which it was to be executed, in that while the language of the contract did not specifically designate the character of the covenant, it was broad enough to require a general warranty clause, but the deed contained only a special warranty of title. For the failure to comply with the original agreement in this respect, however, appellant has but little, if any, cause for complaint. In so far as the deed departs from the prior executory contract, such departure is presumed to represent a change mutually agreed upon by the parties before its final consummation. In such form it represents the final act of the parties and the merger of all antecedent agreements, negotiations and conversations. *Koen* v. *Kerns,* 47 W. Va. 575; *Home Gas Co.* v. *Window Glass Co.,* 63 W. Va. 266. To warrant its reformation because of such variance, proof that its execution was induced by fraud or mistake must be clear and convincing. *Jarrell* v. *Jarrell,* 27 W. Va. 743; *Koen* v. *Kerns, supra; Isner* v. *Nydegger,* 63 W. Va. 677.

Whether through its representatives appellant protested and

signified its disapproval of the deed because of the departure from the provisions of the contract. as its counsel say, is uncertain when tested by the proof offered upon that phase of the case. There can be no doubt that appellant knew of the variance at the time it accepted the deed. But respecting any protest made by its representatives on that account, or any fraudulent assurance on the part of appellee to induce appellant to accept the conveyance in that form, the evidence of the latter is not direct or positive. It lacks the element of certainty; while appellee's evidence to the contrary is clear and emphatic. It leads to the conviction of the truth of the fact that no such objection was made or such fraudulent assurance given when the deed was prepared and accepted; and this is the conclusion reached by the circuit court upon the question. Though the original draft of the deed was prepared by counsel for appellee, defendant's counsel practically rewrote it because of dissatisfaction with some of its terms; and as originally drawn and so redrafted it contained the special warranty provision, and defendant accepted it with knowledge of its contents, without serious protest or objection, if any, as to the form of the covenant, and without complaint until the date it filed its answer to the bill, which occurred nearly four years afterwards. The proof shows that at the time the deed was presented officers of appellant and its attorney discussed together the advisability of accepting a covenant of special warranty, and that the attorney, who had devoted a month or more to an examination of the title to the property, advised them that he could find no defects in it. To aid him in his investigation, appellee permitted him to inspect its muniments of title and papers relating thereto, and in this manner defendant acquired or had ample opportunity to acquire all the knowledge possessed by appellee before the conveyance was made. The reliance placed upon the examination of title made by its attorney, the redraft of the deed and its execution, delivery and acceptance in its final form with the special warranty therein written, clearly indicate a willingness on defendant's part to accept the deed as prepared and delivered, and tend strongly to exonerate appellee from the imputation of an intention to induce defendant to accept a dubious title while assuring it to be good and valid. *Cork* v. *Cook,*

56 W. Va. 51, 58. The character of the proof offered to show that the variance between the deed and the preliminary contract was induced by fraud or mistake is not sufficiently clear and convincing to warrant reformation of the former.

Having thus waived the right to demand a covenant in the form impliedly stipulated for in the contract, appellant's rights are to be measured and determined by the covenant contained in the deed. There is therefore no real necessity for further discussion of the defects alleged to exist respecting title. But as in oral argument and in the briefs counsel have dealt with the question, a few observations relative to it may not be amiss. The only ground relied on by way of impeachment is the so-called Kerfoot claim, not definitely defined, a mere squatter's right resting solely on adverse possession of a small parcel of a larger tract known as "Stony Ridge." For this parcel the claimant sued appellant but for years failed to prosecute it, and neither party attempted to speed a trial thereof or urge an adjustment of the controversy. J. C. Watson, the principal stockholder of the appellee corporation and its active agent, purchased the Kerfoot claim at the comparatively insignificant sum of $40.00, and took an assignment thereof in his own name. Technically this assignment did not directly enure to the benefit of appellant, it is true; but when considered in connection with the grant of the "Stony Ridge" tract, and with the general grant of "all the right, title and interest and estate of the party of the first part of, in and to all the property hereinbefore mentioned and described and hereby conveyed," how or by what way appellant can suffer any loss because of that claim is not apparent. It is too fictitious to be dangerous or harmful. The only other defects alleged, if defects they are, relate to small deficiencies in quantity. But as the deed imports a sale in gross, a conveyance of all the property possessed by appellee, minor deficiencies of that character are not material. *Newman* v. *Kay,* 57 W. Va. 98. Had the covenant been general instead of special, it would not afford protection against such discrepancies, as its office is not to warrant quantity but title. *Burbridge* v. *Sadler,* 46 W. Va. 39; *Adams* v. *Baker,* 50 W. Va. 249. No eviction occurred, no disturbance by paramount title of peaceful enjoyment of the estate vested in appellant, and until one of these events happens

a general warranty covenant remains intact and unbroken and does not warrant an abatement of the purchase price on that account. *McKinley Land Co.* v. *Maynor,* 76 W. Va. 156.

Another ground relied on for reversal questions the right of plaintiff to prosecute this suit to enforce the lien retained in the deed, the contention being that the corporation should sue for the use of its stockholders as the parties beneficially interested in the result of the litigation; otherwise, it says, a decree in favor of appellee would not be *res adjudicata* or prevent a similar suit for the same purpose by the stockholders. The basis of this contention is that the conveyance, including as it did all the stock of the appellee corporation, in effect dissolved and extinguished it, wherefore none but the shareholders to be benefitted by the decree entered in the cause could sue. The deed of conveyance, however, expressly provided for the retention and use of the corporate name to prosecute suits such as this. After reserving a lien in favor of the grantor to secure the payment of the principal and interest evidenced by the notes, the deed has this further provision: "But it is agreed and understood that the right is reserved to the party of the first part to use its name for the use of the present stockholders for the purpose of bringing any suit that may be necessary or proper in enforcing  *  *  * any  *  *  * legitimate right belonging to the said party of the first part which is reserved in this deed."

The obvious import of this reservation was to save to plaintiff the corporate power to do what by this suit it is attempting to accomplish, namely, to foreclose the lien retained in the deed and thereby enforce payment of the obligations assumed by defendant as part of the consideration for the property sold. The object to be accomplished and the right to be exercised defendant questions only in one respect. That objection, as we understand the argument of counsel, is that the former owners of the stock in the plaintiff corporation should maintain the suit or plaintiff should do so for their use and benefit. It is undoubtedly true, as a general rule, that a suit must be instituted by the parties beneficially interested in the relief sought. But treating the conveyance as in effect a dissolution of the Watson-Loy Coal Company, so far as its stockholders' interests were concerned, there is nothing to prevent them from designating in

that instrument, executed by their duly authorized agents, the name in which suit may be maintained for breach of the duties therein imposed.  Such provision the deed made, by and with the knowledge, consent and approval of appellees' stockholders. The words, "may use its name for the use of the present stockholders," does not require that suit shall be maintained "for the use of," but merely connotes the ultimate destination of any recovery thereby obtained.  Moreover, it is a rule of equity, long established, that a party having no substantial interest in a controversy cannot in a court of equity maintain a suit in his name for the benefit of the party beneficially interested.  *McClaskey* v. *O'Brien,* 16 W. Va. 791, pt. 18, Syl; *Grove* v. *Judy,* 24 W. Va. 294; *Kellam* v. *Sayre,* 30 W. Va. 198; *Bank* v. *Cook,* 55 W. Va. 220; *State* v. *Flanagan,* 77 W. Va. 505; *County Court* v. *Cottle,* 81 W. Va. 469.  Whether, if we regard the corporate name as one no longer having material substance behind it, the parties could provide for the institution and maintenance of a suit in its name "for their use", we express no opinion.  Here they have already provided for the retention and use of the corporate name alone in suits to enforce duties under the contract—the name in which the deed was executed, and which defendant frequently has recognized since as one proper for it to deal with.  Moreover, in providing for the retention of the corporate name, the contract merely conforms with the provisions of section 59, ch. 53, Code, which says:  "When a corporation shall expire or be dissolved,  *  *  *  suits may be brought, continued or defended,  *  *  *  and all lawful acts be done, in the corporate name, in like manner and with like effect as before such dissolution or expiration; but so far only as shall be necessary or proper for collecting the debts and claims due to the corporation,  *  *  *  (and) prosecuting and protecting its rights.  *  *  *  "

Appellee admits a clerical error in the calculation of interest whereby the court below entered a decree in its favor for $24,-300.33.  Three several deeds of release filed as part of the record before this court show that interest on the final note was paid to June 2, 1905.  A calculation of interest on $12,500, the face of the note, from that date to April 19, 1919, the date of the decree, at the rate of 5%, discloses an aggregate of $21,-

175.34, principal and interest, as of the latter date.    The amount by which the decree exceeded that sum appellee voluntarily released in the manner prescribed by section 5, ch. 134, Code; and to that extent we also modify the decree.    Section 6, ch. 134, Code; *Watkins* v. *Angotti,* 65 W. Va. 193; *Morris* v. *Baird,* 72 W. Va. 1, 3.

Appellant further contends that the sum decreed to appellee should bear only 5% interest from its date, the rate agreed upon by the parties, whereas the decree is silent respecting the rate and provides merely that it shall bear interest.    The rate contended for by appellant is the correct one, for where a note by its terms bears interest at a rate other than 6% per annum, a decree for payment of the aggregate sum due, including the principal and interest at the specified rate to the date of the decree, should provide for payment of interest thereon at the same rate from that date till paid.    *Shipman* v. *Bailey,* 20 W. Va. 140; *Pickens* v. *McCoy,* 24 W. Va. 344.    See also *Morris* v. *Baird,* 72 W. Va. 1.    The contract rate must govern until the end; and instead of using the words "with interest thereon," thus leaving room for doubt and uncertainty as to the proper rate, the decree should have been more specific.    To that extent we modify it and fix the rate at 5%.

The error of more than $3,000 in the computation of interest, noted above, is not merely technical within the rule laid down in *Conklyn* v. *Shenandoah Milling Co.,* 68 W. Va. 567; *Hope Natural Gas Co.* v. *Shriver,* 75 W. Va. 401; and *Freeman* v. *Swiger,* 83 W. Va. 425, 98 S. E. 440, but is substantial in that the decree, though amendable, is wrong in amount, and to be relieved to that extent this appeal was necessary.    The release of the excess in the lower court by the voluntary action of appellee did not occur till after this appeal had been awarded and the case was nearly ready for submission to this court, and therefore cannot defeat the award of costs to appellant.    We modify the decree, and as modified affirm it, with costs to appellant.

*Modified and affirmed.*