322 S.E.2d 854

**Jeff HARRIS**

v.

**Marvin C. CROWDER, et al.**

**No. CC938.**

Supreme Court of Appeals of West Virginia.

Nov. 20, 1984.

Charles E. Hurt, Charleston, for plaintiff.

William W. Pepper, Pepper & Nason, Charleston, for defendants.

NEELY, Justice:

Our task today, for the first time in West Virginia decisional law, is to determine whether creditors can execute upon a husband's undivided interest in property held jointly with his wife. In the case before us the ineluctable logic of received property law strains in one direction while common humanity and sound public policy strain in the other.

Marvin C. Crowder and Mary Ann Crowder, his wife, bought their family house from Mitchell and Anna Clay, giving the Clays a first deed of trust to secure the purchase money note. Initially both Mr. and Mrs. Crowder lived on the purchased premises, but at the time the creditors' suit that is the subject of this appeal was brought they had separated and Mr. Crowder was living elsewhere. In the circuit court Jeff Harris, the plaintiff below, tried to enforce his March, 1982 judgment

against Mr. Crowder for $9,241. Mr. Harris asked that the circuit court refer the case to a commissioner to take and state an account showing the nature, amount and order of priority of all valid and subsisting liens against Mr. Crowder's real estate and to force a sale of Mr. Crowder's property to discharge the plaintiff's lien.

The case was referred to a commissioner who reported that the plaintiff had an eleventh priority lien against the defendant's property. The record before us indicates that Mr. Crowder had a small army of creditors.[1]

In February, 1984 the Circuit Court of Kanawha County denied Mrs. Crowder's motion to exclude from execution the property that she and her husband held as joint tenants with the right of survivorship and appointed a special commissioner to sell the jointly held property and retain the proceeds until further order of the court. The court then certified on his own motion the following question to this Court:

Where Husband and Wife are joint owners of a parcel of land and the only encumbrance against Wife's undivided one-half interest is a recorded deed of trust securing a note signed by she [sic] and Husband, but where there are numerous judgment and tax liens filed against Husband solely, in addition to the deed of trust, should the Circuit Court grant Wife's Motion to Dismiss, where one of Husband's judgment lien creditors files suit seeking a judicial sale of both Husband's and Wife's interest in the said parcel; or, simply put: Can a judgment lien creditor maintain a creditor's action to sell jointly-owned property where his judgment is against only one of the joint property owners?

Unfortunately, the answer to this certified question is neither a simple "yes" nor "no."

Each case of this type must be processed individually with due attention to considerations that we shall illuminate below.

I

In Anglo-American law there have been two methods by which a husband and wife can hold property and more or less protect that property from the judgment creditors of one of them alone. The first of these methods is the tenancy by the entireties that survives in twenty-two common law states[2] and the second is the joint tenancy. We held in *Wartenburg v. Wartenburg,* 143 W.Va. 141, 100 S.E.2d 562 (1957) that tenancies by the entireties have been abolished in West Virginia by statute. Under *W.Va.Code,* 36–1–20 [1981], however, joint tenancies continue to flourish here.

 There is no question in this jurisdiction that one joint tenant can unilaterally destroy the right of survivorship of the other joint tenant by *voluntarily* conveying his interest to a third party. Recently we held in syl. pt. 4 of *Herring v. Carroll,* 171 W.Va. 516, 300 S.E.2d 629 (1983) that:

A joint tenant may convey his undivided interest in real property to a third person. When one of two joint tenants conveys his undivided interest to a third person the right of survivorship is destroyed. Such third party and the remaining joint tenant hold the property as tenants in common.

In this regard West Virginia is not eccentric; we follow ancient and well-established law. 2 W. Blackstone, *Commentaries* * 185.[3]

In fact, since 1539 when a statute on this subject was passed in England a joint tenant has even been allowed to destroy the right of survivorship *without* a conveyance by suing out a writ of *De participatione facienda* in a court of equity and partition-

1. The creditors who had reduced their claims to judgment included the State of West Virginia for taxes, Hardman Supply Company, Young's, Inc., the United States government for federal taxes, Kerstein Engineering Co. Inc., Toledo Gardener's Cooperative, Huber Peat Co., Dorothy Jackson, and finally the Sarah and Pauline Maier Scholarships Foundation, Inc.

2. *See Powell on Real Property,* § 622, Note 7.

3. *See also Delanoy v. Delanoy,* 216 Cal. 23, 26, 13 P.2d 513, 514 (1932); *Giles v. Sheridan,* 179 Neb. 257, 137 N.W.2d 828 (1965); *Alexander v. Boyer,* 253 Md. 511, 253 A.2d 359 (1969); *Johnson v. Johnson,* 11 Ill.App.3d 681, 297 N.E.2d 285 (1973); *Wittock v. Ramponi,* 446 So.2d 271 (Fla. App.1984).

ing the land. The 1539 statute, 31 Henry VIII, Chapter I, says in relevant part:

II. Be it therefore enacted by the King our most dread Sovereign Lord, and by the Assent of the Lords Spiritual and Temporal, and by the Commons, in this present Parliament assembled, That all joint Tenants and Tenants in common, that now be, or hereafter shall be, of any Estate or Estates of Inheritance in their own Rights, or in the Right of their Wives, of any Manors, Lands, Tenements, or Hereditaments within this Realm of England, Wales, or the Marches of the same, shall and may be coacted and compelled, by virtue of this present Act, to make Partition between them of all such Manors, Lands, Tenements, and Hereditaments, as they now hold, or hereafter shall hold as joint Tenants, or Tenants in common, by Writ *De participatione facienda*, in that case to be devised in the King our Sovereign Lord's Court of Chancery, in like manner and form as Coparceners by the common Laws of this Realm have been and are compellable to do, and the same Writ to be pursued at the common Law.

■ It is instructive for our purposes here to follow the evolution of early statutes on this subject because one year after the above statute was enacted, in 1540, a remedial statute was passed, 32 Henry VIII, Chapter XXXII which expanded the circumstances under which a writ of *De participatione facienda* would issue to include estates for life or a term of years and then protected other joint tenants from prejudice as a result of operation of the writ. The expansion of the instances in which the writ would issue is of no relevance to us here, but what is of relevance is that the 1540 statute inserted a new proviso governing the administration of writs of partition. That proviso was the embryonic authority for courts of equity to evaluate each case in which partition is sought to determine whether there will be "prejudice" to joint owners who are not party to the suit. The exact wording of the 1540 statute is:

II. Provided alway, and be it enacted, That no such Partition or Severance here-

after to be made by force of this Act, be, nor shall be prejudicial or hurtful to any person or persons, their Heirs or Successors, other than such which be parties unto the said Partition, their Executors, or Assigns.

This proviso from the 1540 statute on partition is carried forward in an even stronger version in our own *W.Va.Code,* 37–4–3 [1957] where the *Code* says:

... in any case in which partition cannot be conveniently made, if the interests of one or more of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, *and the interest of the other person or persons so entitled will not be prejudiced thereby,* the court ... may order such sale. [emphasis supplied by court].

It is well established, therefore, that a joint tenant may bring an action to partition, and that the court will partition the property in kind or by sale, but only if no prejudice will result to the other joint tenant. "Prejudice," of course, is an extraordinarily difficult word to define: in this context, at least, the term has a certain inherent elasticity.

The appellant, Mr. Crowder, argues that his rights in the property are subject to his wife's survivorship interest and that, therefore, the creditor can sell only that which the debtor owns. But, as *Herring v. Carroll, supra,* holds, the debtor "owns" the right to destroy the survivorship interest by a voluntary conveyance during his lifetime. Under syl. pt. 4 of *Herring, supra,* whenever a joint tenant conveys his interest in the tenancy to a third party there is a rupture of the four unities necessary for a joint tenancy and the owners thereupon become tenants in common. The initial question, then, that must be answered in the case before us is whether a creditor can stand in the shoes of his debtor and do what the debtor could do himself, namely (1) partition the joint tenancy, (2) convert the joint tenancy into a tenancy in common, and (3) destroy the survivorship interest of the other joint tenant.

It would appear that the unrelenting logic of property law demands that we hold that when a husband and wife hold property as joint tenants a creditor of either one of them alone may enforce his judgment lien against the debtor spouse's interest in the property by bringing an action to partition, and where partition cannot be accomplished in kind it may be accomplished by sale. The logic of property law, however, is not entirely dispositive of this issue as a glance at the law of our sister states will quickly disclose.

## II

Throughout the United States there appears to be widespread reluctance to allow the creditors of *one* spouse to sell the family house to satisfy debts. Some states approach the problem exclusively through the use of homestead exemptions,[4] but as we pointed out above, twenty-two states make it difficult, if not impossible, for a creditor to reach one spouse's interest in real property by preserving the ancient, common law tenancy by the entireties. When we observe that many of the states that do not recognize tenancies by the entireties are French- or Spanish-tradition community property states, the widespread preservation of tenancies by the entireties becomes persuasive evidence of a nationwide public policy of protecting wives and children in the use of the family house.

It is hardly productive here to recount the long and interesting history of tenancies by the entireties;[5] however, let it suffice to point out that before the passage of the Married Women's Property Acts and other modern legislation giving social and economic equality to women, the tenancy by the entireties was a device that allowed the husband to manage and control all property owned jointly with his wife. Almost all of the attributes of the ancient tenancy by the entireties known to the common law have now been eliminated in the United States either by statute or by court decision.[6] Indeed, it would appear that in all of the states that still recognize tenancies by the entireties, those tenancies are distinguished from joint tenancies by only one palpable characteristic: the right of survivorship either cannot be destroyed involuntarily by a creditor, or can be destroyed only with great difficulty. In other words, the archaic fiction of a tenancy by the entireties is preserved *only* because it makes it almost impossible for creditors to reach a debtor's family house. This is not, however, to say that creditors do not try with some regularity to do so, and occasionally even with some success.

In many of the states that recognize tenancies by the entireties, when a husband's interest in the estate is sold at an execution sale, the purchaser takes subject to the wife's right of survivorship and, in some cases, the purchaser's only benefit is a right to share the house with the debtor's termagant wife, a dubious benefit at best.[7]

---

**4.** The West Virginia homestead exemption found in *W.Va. Const.*, art. VI, § 48 is miserly. It amounts to a mere five thousand dollars. Under the authority of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 et seq. (Supp. IV 1980), West Virginia has "opted-out" of the federal exemptions and provides its bankrupts with a mandatory set of state legislated bankruptcy exemptions. Currently *W.Va.Code*, 38–10–4 [1981] permits the debtor in a bankruptcy proceeding to exempt real property of the estate, used as a residence, to a value of $7,500. This section, setting forth West Virginia's bankruptcy exemptions, mirrors the federal bankruptcy exemptions almost entirely. 11 U.S.C. § 522(d). The one significant distinction is that a West Virginia debtor may exempt personal property up to only one thousand dollars although the federal act, in the absence of a state enactment, would permit the debtor to claim limitless personal exemptions as long as each claimed item

does not exceed two hundred dollars in value. 11 U.S.C. § 522(d)(3).

**5.** A history of tenancies by the entireties can be found in: 4 *Thompson on Real Property* § 1784 et seq.

**6.** *See* Note, "Real Property—Tenancy by the Entirety in Real Property During Marriage," 47 *N.C.L.Rev.* 963 (1969); *Powell on Real Property* § 623.

**7.** *Berlin v. Herbert,* 48 Misc.2d 393, 265 N.Y.S.2d 25 (1965). The essential point in these cases remains the inseverability of a tenancy by the entirety; neither husband nor wife, without the other's acquiescence, can alienate the estate and so affect the other's survivorship rights. *Moore v. Denson,* 167 Ark. 134, 268 S.W. 609 (1924). In jurisdictions where the purchaser of the hus-

In some states courts allow such a purchaser to bring an action for partition, but the purchaser's resulting moiety is itself subject to survivorship in the non-debtor spouse.[8] It all gets terribly complicated and the whole subject provides a field day for law school professors and law review editors. But, as is so often the case in the law, the point is that complication is what humane public policy has strived for: the more complicated the better![9] In the wake of complication come uncertainty and exorbitant legal fees that chill the exercise of creditors' rights against family homes!

The Supreme Court of New Jersey, with its usual candor, held as much in a lovely case styled *Newman v. Chase*, 70 N.J. 254, 359 A.2d 474 (1976). In *Newman, supra*, the plaintiff purchased all of the bankrupt husband's interest in a home owned by husband and wife as tenants by the entireties. The plaintiff then brought an action against the husband and wife to partition the estate for the joint lives of the husband and wife. The Supreme Court of New Jersey held that by purchasing the husband's interest in the house from the trustee in bankruptcy the plaintiff obtained the husband's interest as tenant in common for the joint lives of the husband and wife and any interest the husband would take if he survived his wife. Nonetheless, even though tenants in common in New Jersey have an almost absolute right to partition, the New Jersey Supreme Court held that in this type of case, involving a modest family house, equity would refuse a partition: all the plaintiff had bought was the right to live in the house with the bankrupt's wife. The language of the Supreme Court of New Jersey is worth savoring at length:

> As we have already indicated, there are a number of cases in New Jersey holding—or at least stating—that a tenant in common has an absolute right to partition. [citations omitted] ...

But partition is also an ancient head of equity jurisdiction, an inherent power of the court independent of statutory grant. [citations omitted]. In the exercise of this power our courts of equity have not hesitated to exercise discretion as to the particular manner in which partition is effected between the parties.

. . . . .

No case in this state has hitherto gone so far as to deny absolutely the right of partition to a petitioning cotenant, at least in the absence of a prior agreement not to partition. [citations omitted]. In other jurisdictions, however, courts have allowed equitable defenses to be raised to defeat relief by way of partition....

In the case of partition sought by a transferee of the interest of one spouse in the family home, considerations of policy persuade us that a court should be permitted to exercise its equitable discretion in deciding whether or not to allow the remedy. While the original reason for the peculiar characteristics of a tenancy by the entirety was no doubt the common-law concept of the unity of husband and wife, [citations omitted] the fact that the Legislature has preserved these characteristics indicates that they continue to serve the ends of public policy....

In effect, the special treatment of tenancies by the entirety in New Jersey serves the purposes which are achieved in many states by statutory or constitutional homestead laws. [Citation omitted]. Just as the homestead exemptions effect a balance between two competing social policies—on the one hand, that a debtor's assets should be available to his creditors; on the other, that the family of a debtor should not become a charge upon the state—so can an equitable treatment of the rights of a purchaser of one spouse's interest in a tenancy by the

---

band's interest is not entitled to shared physical possession of the premises, the purchaser is entitled to an accounting based on the imputed rental value of the tenancy. *Newman v. Chase*, 70 N.J. 254, 359 A.2d 474 (1976); *In re Weiss*, 4 B.R. 327 (Bkrtcy.1980).

8. *See, e.g., Newman v. Chase*, 70 N.J. 254, 359 A.2d 474 (1976).

9. *See* R. Neely, *Why Courts Don't Work*, McGraw-Hill (New York, 1984) Chp. 4.

entirety serve to achieve a similar balance.

The life interest in residential real property for the joint lives of two spouses is a speculative asset, likely to bring only a low price and hence to be of little avail to a creditor seeking satisfaction of a spouse's debt. This consideration alone might not operate to deny to a purchaser the right of partition, especially as it has long been held that life estates are partible. [Citations omitted]. But when the creditor's interest in the dwelling is weighed against that of the debtor's family, equitable principles persuade us that the creditor should not, as of right, be granted such minimal relief at the cost of dispossessing the family of its home.

*Norman v. Chase, supra,* 70 N.J. at 262–66, 359 A.2d at 478–80. Although New Jersey is different from West Virginia in that a limpid version of the common law tenancy by the entireties survives there, we believe that the Supreme Court of New Jersey has reached a near-perfect result and should be emulated in West Virginia under the partition statute, *W. Va. Code,* 37–4–3 [1957] that accords our courts power to inquire into "prejudice" to a non-debtor joint tenant.

### III

Under the free enterprise system our economy is regulated through recurring cycles of human suffering. Successful competitors take the markets from unsuccessful competitors; new products are born and older products die; plants and even whole industries migrate in response to opportunities to achieve lower costs; and, people who have spent lifetimes learning crafts find themselves confronted by new technology that make their hard-won skills redundant. In the United States, then, low costs, high productivity, and steady growth are achieved through the unrelenting discipline of competition and its attendant misery.

There is little question that the free enterprise system has produced a higher rate of economic growth, a faster pace of job creation, and a substantially higher standard of living for the average person in the United States than any alternative available elsewhere.[10] But it is important to recognize that the inability to pay debts in a free enterprise economy is randomly distributed as an inherent part of a market mechanism that controls resource allocation. Although some debtors are besieged by their creditors because of conduct that is morally blameworthy, the great majority are not. One of the functions of law is to distribute the costs of operating this society in an equitable way: when loss is inevitable, it should fall on the strong and not upon the weak. St. Matthew 25:40.

We are not disposed, therefore, to allow the inexorable logic of property law to be entirely dispositive of the issue before us. When a creditor seeks to sell a family's home to satisfy the debts of one spouse alone, a whole new dimension is given to the equitable provision in our partition statute that excludes partition when prejudice occurs to another tenant. When, for example, a modest, jointly-owned house has an unassignable $75,000 mortgage at 8 percent and would sell on today's market for $100,000, how is the wife to be compensated for the loss of her contract right to a low interest mortgage? Under such circumstances partition of the family home would be like partition of a table: when we partition a table we do not emerge with two small tables; we emerge with two useless pieces of junk!

Nonetheless, we hold that creditors of one joint tenant may reach that joint tenant's interest and force partition either in kind or by sale, but only if "the interest of the other person or persons so entitled will not be prejudiced thereby." *W. Va. Code,* 37–4–3 [1957]; *See also Consolidated Gas Supply Corp. v. Riley,* 161 W.Va. 782, 247 S.E.2d 712 (1978). Obviously, the interest of a non-debtor spouse in

---

**10.** *See* P.F. Ducher, "Why America's Got So Many Jobs," *The Wall St. Journal,* 24 January 1984.

jointly-held property can never be reached by the creditors of the other spouse.

## IV

■ The appellants in the case before us urge us to rule that the sale of a debtor's interest in jointly held property and the partition of that property be two separate proceedings. We decline to so rule, however, because under modern court procedure both proceedings can be most efficiently done at the same time. *W. Va. Code,* 38–3–9 [1923] provides for the sale of a debtor's property to satisfy a judgment lien. It specifically states that such a lien may be foreclosed by a suit in equity, provided a writ of execution has issued against the judgment debtor's property within two years before the bringing of the suit and the writ of execution has been returned showing no property of the judgment debtor could be found. *W. Va. Code,* 38–3–10 [1923] specifies that all persons having liens against the real estate sought to be sold be made parties to the suit; it does not require that co-owners, who are not lienholders, be made parties.

Since the enactment of the Married Women's Property Acts, a wife's property is not liable for her husband's individual debts. *See* 4A Thompson, *Real Property,* § 1904. The interest of Mary Ann Crowder in the subject property cannot be reached to satisfy her husband's individual debts, but that does not mean that the property in question cannot be sold and the part of the proceeds attributable to her husband's interest attached to satisfy the judgment against him. *Morris v. Baird,* 72 W.Va. 1, 78 S.E. 371 (1913).

In the ordinary course of events, the judgment creditor of one joint tenant can, under *W. Va. Code,* 38–3–9 [1923] cause the sale of that joint tenant's interest. The purchaser at such a sale would then be a cotenant with the remaining cotenants in the property. Under our partition statute, *W. Va. Code,* 37–4–1 [1936], the purchaser at the judgment lien sale, after becoming an owner of an interest in the property, could, by meeting the requirements of the statute and showing the reasonableness of the sale, partition the property. It hardly requires an efficiency expert, however, to recognize that the foreclosure of the judgment lien and the partition of the property can and should be done in the same proceeding if both the highest possible sale price for the property obtained and economy for the courts and the litigants is to be achieved.

Under Rule 18, *W. Va. R. C.P.,* the party asserting a claim may join claims against an opposing party. Rule 18(b) specifically provides:

> (b) *Joinder of remedies; fraudulent conveyances.*—Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money.

In light of the wording of Rule 18 we see no impediment to allowing a proceeding to enforce a judgment lien to be joined with a proceeding to partition the property in kind or by sale. However, when the two proceedings are joined, both the jurisdictional and procedural requirements relating both to judgment lien enforcement sales and partition sales must be met. As a result of our holding in Section III, *supra,* it is conceivable that a creditor could succeed in his claim for judgment lien enforcement but fail to meet the showing of no prejudice to the other joint tenant necessary for a partition sale.

## V

The equitable considerations that should instruct a circuit court's determination of when forced partition of a joint tenancy is equitable are too varied to be addressed in the abstract here. Certainly, however, the favored treatment that sound public policy would extend to family houses need not necessarily be extended to jointly owned

business property. There should be a fairly strong presumption that business property may be reached in a creditor's suit. Similarly, both the size and the nature of joint holdings must be taken into consideration. Finally, it is an ancient maxim of equity that those who seek equity must be willing to do equity. Of course, there is a limit to this obligation: creditors cannot demand the life's blood of an innocent spouse.

■ Accordingly, we are unable to answer the certified question presented to us by a simple "yes" or "no." The proper answer, indeed, is "maybe." The circuit court was correct in holding that the interest of one joint tenant *may* be reached by creditors and the property partitioned either in kind or by sale. But the circuit judge did not qualify his ruling by pointing out that when creditors seek to subject a jointly-owned family house to the satisfaction of outstanding judgments, the court must look carefully to the issue of prejudice to the non-debtor spouse. Therefore, we remand this case for inquiry into the question of prejudice under *W.Va.Code*, 37–4–3 [1957] and for further proceedings consistent with this opinion.

Certified question answered;

Case remanded for further proceedings.