In re Terry A. SUMPTER and Denise M. Sumpter, Debtor.

Bankruptcy No. 97–60548.

United States Bankruptcy Court, W.D. Missouri.

Nov. 9, 1999.

Thomas J. O'Neal, Shughart, Thomson & Kilroy, Springfield, MO, for trustee.

J. Kevin Checkett, Checkett & Pauly, Carthage, MO, for Central National Bank.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The Chapter 7 trustee filed his Final Report and Application for Final Compensation and Reimbursement of Expenses and Proposed Final Distribution in this bankruptcy case. In the pleading, the trustee proposed to pay, with the proceeds received by him from the liquidation of the estates' assets, both joint and individual creditors of the debtors. Creditor Central National Bank (Central), which held a debt that both debtors were liable on, objected to the proposed distribution. Central contends that the assets liquidated by the trustee were held as tenants by the entirety under Missouri law, and that the proceeds should be segregated for payment of all joint claims before any distribution is made to individual creditors. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUE PRESENTED

Debtors Terry and Denise Sumpter originally claimed Missouri exemptions. However, they claimed Texas exemptions in their converted bankruptcy case, and the trustee, with the approval of the Court, withdrew his objection to those exemptions. Texas is a community property state. In a community property state the community property of a husband and wife is subject to the payment of debts contracted by either of them during the marriage. Can the Chapter 7 trustee use proceeds from the liquidation of community property to satisfy the claims of both joint and individual creditors of the debtors.

## DECISION

In Texas a spouse's interest in community property is subject to the execution of individual creditors to satisfy a judgment debt against the other spouse. Therefore, the trustee can use the proceeds of such property to satisfy the claims of both joint and individual creditors of the debtors.

## FACTUAL BACKGROUND

On April 14, 1997, the Sumpters filed a Chapter 13 bankruptcy petition. Their schedules at that time listed unsecured debt in the amount of $623,740.97. They claimed Missouri exemptions as to their personal and real property. The Chapter 13 trustee subsequently filed a motion to dismiss the Chapter 13 case, claiming that the Sumpters were ineligible for Chapter

13 since their unsecured debt exceeded the allowable amount. The Sumpters then filed a motion to convert the case to Chapter 11. On June 27, 1997, this Court[1] converted the case to Chapter 11. The Sumpters, however, did not file operating reports, affidavits, petitions for payment of salaries, or a Plan of Reorganization and Disclosure Statement as ordered by the Court. Instead, on June 30, 1997, they filed a motion to transfer the case to the Eastern District of Texas, Beaumont Division. Terry Sumpter had been living and working in Texas for approximately 18 months before the filing of the bankruptcy case, though Denise Sumpter had remained in Missouri where the family home was located. Before the Court ruled on the motion to transfer the case, the United States Trustee filed a motion to convert the case to Chapter 7. A hearing was held on September 16, 1997, and counsel for the Sumpters advised the Court that they did not object to conversion of the case to Chapter 7. On September 22, 1997, Judge See granted the motion to convert the case to Chapter 7 and denied the motion to transfer the case.

On October 14, 1997, the Sumpters filed conversion schedules. Schedule "C" of the conversion schedules claimed Texas exemptions in all of their personal property, including a life insurance policy on Terry Sumpter that is owned by Denise Sumpter. The cash value of the life insurance policy was listed as $83,106.56. Though the Sumpters still owned real estate in Missouri, they did not claim any exemption in the real estate on their conversion schedules.

The Chapter 7 trustee objected to the use of Texas exemptions in this Missouri case,[2] but the parties reached a settlement agreement before the Court ruled on the objection. The settlement agreement, which was duly noticed to all creditors on February 5, 1998,[3] provided that the Sumpters would pay to the trustee the sum of $117,500.00 in cash.[4] It further provided that the Sumpters would claim no interest and no exemptions in the monies they paid to the trustee.[5] In exchange, the trustee agreed to relinquish all interest of the bankruptcy estate in all of the assets disclosed by the Sumpters in their conversion schedules. The settlement also provided that upon receipt of the sum of $117,500.00 the trustee would withdraw his Objection to Exemptions.[6] No one filed an objection to the settlement agreement, and on February 27, 1998, it was approved by Order of this Court.[7] The Sumpters, in fact, paid the amount as stated in the settlement, and on April 24, 1998, the trustee's Objection to Exemptions was withdrawn.[8]

On September 17, 1999, the trustee filed a Notice of Filing of Trustee's Final Report and Application for Final Compensation and Reimbursement of Expenses and Proposed Final Distribution, and Deadline for Filing Objections in conjunction with a Summary of the Trustee's Final Report, Application for Final Compensation and Reimbursement of Expenses, and Proposed Distribution.[9] The proposed distribution provided for pro rata payment to both individual and joint creditors of the Sumpters. All of the individual creditors are creditors of Terry Sumpter. Central, the largest unsecured creditor, and a joint

1. The Honorable Karen M. See was the presiding bankruptcy judge at the time this case was filed. Judge See resigned her position effective January 28, 1999, and the undersigned assumed her docket, including this case.

2. Doc. # 46.

3. Doc. # 63.

4. Doc. # 61.

5. *Id.*

6. *Id.*

7. Doc. # 66.

8. Doc. # 71.

9. Doc. # 94.

creditor of Terry and Denise Sumpter, objected to the proposed distribution. Central argued that the property disclosed on the bankruptcy schedules is presumed to be held as tenants by the entirety in Missouri, and, thus, such property is exempt from the claims of individual creditors. The trustee responded that the Sumpters waived all claims of exemptions in the settlement proceeds, that the Sumpters claimed the property as exempt in Texas, which does not recognize tenants by the entirety, that the Sumpters did not claim the real estate as exempt in the conversion schedules, and that if Central wished to object to the waiver of exemptions, it needed to do so before the settlement agreement was approved by this Court. A hearing was held on October 28, 1999. The sole issue to be decided is whether the monies in the estate are the proceeds of property that is exempt from the claims of the individual creditors of Terry Sumpter.

## DISCUSSION

This case has a rather unusual procedural history. Though the trustee objected to the debtor's use of Texas exemptions as to their personal property, as a result of the Order of this Court approving the settlement agreement, any objection to that election was ultimately withdrawn by the trustee. The law of the case, therefore, is that the Sumpters are entitled to use Texas exemptions as to all of their personal property. Moreover, they did not claim any exemption in the real estate they own in Missouri. I will deal first with Central's arguments as to the real property.

 The Sumpters did not elect to exempt any interest they may have had in the real estate located in Missouri on their conversion schedules. Central argues, however, that real estate held in Missouri by a husband and wife is presumed held as a tenancy by the entirety, therefore, to the extent a portion of the settlement funds derived from the Sumpters sale of their interest in the real estate, those funds are tenancy by the entirety funds. They are, thus, exempt from the claims of individual creditors. Missouri does recognize tenancy by the entirety, and there is a presumption that both personal property and real estate owned by a husband and wife is held as tenants by the entirety.[10] "Tenancy by the entirety is a form of ownership in property created by marriage in which each spouse owns the entire property rather than a share or divisible part, and thus at the death of one spouse, the surviving spouse continues to hold title to the property."[11] In other words, the husband and wife have unity of interest, unity of entirety, unity of time, and unity of possession, and both are seized of the entirety.[12] This form of title derives from ancient common law, and serves the purpose of making it difficult, if not impossible, for a creditor of one spouse to reach that spouse's interest in property held by both spouses as tenants by the entirety.[13] Tenancy by the entirety is distinguishable from joint tenancy by one singular characteristic. The tenancy cannot be destroyed involuntarily by an individual creditor.[14] And one spouse cannot destroy the entirety without the express consent of the other spouse.[15] Moreover, the Bankruptcy Code (the Code) gives a debtor discretion to claim an exemption in tenancy by the entireties property, but it does not mandate it:

10. *See, e.g. Scott v. Flynn,* 946 S.W.2d 248, 250 (Mo.Ct.App.1997).

11. *Rinehart v. Anderson,* 985 S.W.2d 363, 367 (Mo.Ct.App.1998).

12. *Murawski v. Murawski,* 240 Mo.App. 533, 209 S.W.2d 262, 264 (1948).

13. *Harris v. Crowder,* 174 W.Va. 83, 322 S.E.2d 854, 858 (1984).

14. *Id.* at 858.

15. *Sutorius v. Mayor,* 350 Mo. 1235, 170 S.W.2d 387, 392 (1943), *overruled on other grounds on rehearing,* 350 Mo. 1235, 171 S.W.2d 69 (1943).

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate . . .

> (2)(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.[16]

But, this exemption is allowed under Missouri, not Texas, law. Here the Sumpters ultimately elected Texas, not Missouri, exemptions, so tenancy by the entirety is not applicable.

The settlement agreement did not itemize or value the property in the bankruptcy estate that was returned to the Sumpters in exchange for the sum of $117,500.00. The settlement agreement purported to be an agreement between the trustee and the debtors "resolving the trustee's objections to certain exemptions claimed by the debtors."[17] It was never styled as a sale of estate assets, though the agreement did provide as follows:

> (b) The debtors will, within 30 days of the date of the Court approves this application, pay to the trustee $117,500 in cash. The debtors agree that they will claim no interest and no exemption in the monies that they pay to the trustee in accordance with the terms of this agreement

> (c) Upon payment of the sum of $117,-500 cash, the trustee will relinquish all interest of the estate in all assets disclosed by the debtors in the Schedules of Debts and Assets and Statement of Financial Affairs that they signed on October 8, 1997. . . . The trustee will execute such documents of transfer and other

documents as may be necessary to carry out this agreement.

> ■ (f) The debtors acknowledge and agree that until the trustee has been paid the sum of $117,500 in cash as above provided, the trustee's Objection to Exemptions will remain outstanding and will not be resolved or withdrawn until said monies are fully paid. The trustee agrees that upon the payment of said sum, he will withdraw his Objection to the debtors' exemptions.[18]

The agreement was noticed to all creditors and no objection to the agreement was filed. This Court entered an Order approving the agreement and no party appealed that Order. I find, therefore, that the law of this case is that the Sumpters were entitled to claim Texas exemptions as to their personal property. I further find that either the settlement agreement represents the sale of the Sumpters' exempt personal property, and they waived any claim of exemption they might have as to the proceeds of that sale, or the proceeds of the sale are exempt according to Texas law. Central claims that the proceeds of the settlement are exempt from the claims of Terry Sumpter's individual creditors because the assets themselves would have been exempt from the claims of individual creditors. Ignoring the issue of waiver for the moment, that may well be true in Missouri where a husband and wife are presumed to hold personal property as tenants by the entirety. But, Texas does not recognize tenancy by the entirety. Texas is a community property state.[19] In a community property state one spouse cannot be held personally liable for a debt incurred individually by another spouse, but a non-signing spouse's interest in joint management and control community property is subject to execution to satisfy the

---

16. 11 U.S.C. § 522(b)(2)(B).

17. Doc. # 61.

18. *Id.*

19. Thomas M. Feathrston and Amy E. Douthitt, *Changing the Rules by Agreement: The New Era in Characterization, Management, and Liability of Marital Property,* 49 **Baylor L.Rev.** 271, 274 (1997).

debt.[20] All property possessed by either spouse during a marriage is presumed to be community property unless the property is separate property acquired by one spouse by gift, devise, or descent.[21] A spouse's separate property is not subject to the liabilities of the other spouse,[22] and community property subject to a spouse's sole management, control, and disposition is not subject to any nontortious liabilities that the other spouse incurs during the marriage.[23] A person has sole management, control, and disposition of the community property that he or she would have owned if single.[24] Sole management community property, therefore, includes personal earnings.[25] However, absent proof that community property is subject to one spouse's sole management and control, the rule in Texas is that community property of a husband and wife is subject to the payment of debts contracted by either of them during the marriage, unless it is shown that the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction.[26] I note that Denise Sumpter was unemployed at the time this case was filed, and Terry Sumpter was responsible for all of the earnings of the household. Central offered no evidence that the personal property at issue here was under the sole management or control of Denise Sumpter. Nor did Central offer any evidence that the individual creditors of Terry Sumpter had agreed to look only to the separate estate of Terry Sumpter for satisfaction of their claims. Central has, therefore, failed to rebut the presumption in Texas that property acquired during the marriage is community property, and that it is there-fore available to satisfy debts acquired by either spouse during the marriage.

As I stated above, the Sumpters waived whatever claim of exemption they might have had in the proceeds of the settlement agreement. In addition, the Sumpters claimed Texas exemptions for their personal property, and, under Texas law, the individual creditors of Terry Sumpter could have executed against the community property of Terry and Denise Sumpter. Finally, if Central had objections to the terms of the settlement agreement, it needed to raise them before the agreement was approved by this Court. It failed to do so, and this Court is bound by the terms of the final Order approving the settlement agreement. For all of these reasons, Central National Bank's Objection to Trustee's Proposed Final Distribution will be overruled, and the Chapter 7 trustee's Final Report and Application for Final Compensation and Reimbursement of Expenses and Proposed Final Distribution will be approved.

An Order in accordance with this Memorandum Opinion will be entered this date.

**20.** *Nelson v. Citizens Bank and Trust Co.,* 881 S.W.2d 128, 131 (Tex.Ct.App.1994).

**21.** *Grost v. Grost,* 561 S.W.2d 223, 228 (Tex. Civ.App.1977); Tex.Fam.Code Ann. § 3.003 (1998)

**22.** Tex.Fam.Code Ann. § 3.202(a) (1999).

**23.** *Id.* at § 3.202(b).

**24.** Thomas M. Feathrston and Amy E. Douth-itt, *Changing the Rules by Agreement: The New Era in Characterization, Management, and Liability of Marital Property,* **49 Baylor L.Rev.** 271, 277 (1997)

**25.** *Id.*

**26.** *Kimsey v. Kimsey,* 965 S.W.2d 690, 702 (Tex.Ct.App.1998); *Alamo Candy Co. v. Zacharias,* 408 S.W.2d 517, 519 (Tex.Civ.App. 1966).