# Staunton.

## Ransome v. Watson's Administrator, Etc.

### September 23, 1926.

1. Trusts and Trustees—*Resulting Trusts—Joint Purchase—Case at Bar.*—In the instant case, a suit for specific performance, if there was a joint purchase by W and R with the agreement that R should pay for and receive title to five acres of the land, and the title was conveyed to W, a trust would result in favor of R to the five acres. This trust, if it existed, could be enforced against W, and was good against his creditors, but not against a *bona fide* purchaser for value.

2. Judgments and Decrees—*Creditor Only Gets what the Debtor Owned.*—The creditor can never get by his judgment more than his debtor really owns, and to this he will be confined, as he should be, by courts of equity.

3. Trusts and Trustees—*Resulting Trusts—Creditors—Bona Fide Purchasers.*—It is a universal principle of equity that a *bone fide* purchaser for value from the trustee (in a resulting trust) takes the legal title free of a resulting or other trust of which he has no notice. But it is carefully to be observed that creditors stand on a wholly different footing. The creditor, unlike the purchaser not having laid out his money on that specific property, but merely on the general credit of his debtor, is bound by all the equities which bind his debtor; or, as it is generally expressed, the creditor stands in the shoes of his debtor.

4. Trusts and Trustees—*Resulting Trusts—Definition of Bona Fide Purchasers.*—A *bona fide* purchaser, within the rule that a *bona fide* purchaser takes free of a resulting trust of which he has no notice, is one who has acquired the legal title, either in himself or in another for his benefit, and who has laid out his money on that specific property without notice of the trust.

5. Trusts and Trustees—*Resulting Trusts—Bona Fide Purchaser—Mortgages and Deeds of Trust.*—A creditor who puts out his money specifically on a particular piece of property, and secures from the borrower a conveyance of the legal title to the property, by way of pledge, mortgage or deed of trust as security for the loan, is, in equity, regarded as a purchaser for value to the extent of his debt. His rights, therefore, are superior to those of a beneficiary in a resulting trust upon the property of which he has no notice.

Syllabus.

6.  Vendor and Purchaser—*Recording Acts—Object of the Recording Acts—Actual Notice of Defects in Title.*—An intending purchaser is not required to do more than to examine the public records in order to ascertain the state of a recorded title, and when he finds this complete he can purchase with safety unless he was affected with notice of defects not disclosed by the record. The object of the registry acts is to give notice, but, of course, if a purchaser knows of defects in the title of his vendor, he takes the title subject to such defects, however perfect the recorded title may be.

7.  Mortgages and Deeds of Trust—*Trustee a Purchaser—Notice to Trustee as Notice to Purchaser—Case at Bar.*—The trustee in a deed of trust to secure creditors is a purchaser, and notice to him is notice to the creditors secured. Therefore, in the instant case, a suit for specific performance, where the trustee in a deed of trust on the property in question failed to answer complainant's bill charging him with notice of her claim of title and in his testimony did not deny the notice charged in the bill, the deed of trust is subordinate to the title of complainant.

8.  Vendor and Purchaser—*Definite Number of Acres Conveyed Out of a Larger Tract—Validity—Selection.*—Where a difinite number of acres are conveyed out of a larger tract, the deed is not void for uncertainty, but the grantee becomes a tenant in common with the grantor in the whole, in the proportion that the smaller tract bears to the larger; and the right of the grantee to select the smaller number of acres is a continuing right and passes to subsequent alienees until a selection is made.

9.  Vendor and Purchaser—*Definite Number of Acres Conveyed Out of a Larger Tract—Selection—Subsequent Deed of the Whole Tract.*—Where a grantee in a deed had notice of a former deed of a definite number of acres to be selected from the tract conveyed to him, by virtue of its recordation prior to his deed, he takes subject to the right of selection of the grantee in the prior deed.

10. Specific Performance—*Deeds—Denial of Knowledge of Complainant's Claim of Ownership—Burden of Proof as to Notice—Case at Bar.*—In the instant case, a suit for specific performance, complainant alleged that the trustee and beneficiary in a deed of trust upon the property in question had actual knowledge of her claim of ownership. This both the trustee and beneficiary denied, and no proof on the subject was offered by either party. The bill did not charge that the deed of trust was fraudulently made or that the debt secured was not justly due and owing. The only charge was that the trustee and creditor had notice of complainant's claim. This allegation was flatly denied and there was no evidence to support the charge.

  *Held:* That the burden was on complainant to sustain the charge, and, having failed to do so, the validity of the deed of trust was unimpeached.

11. TRUSTS AND TRUSTEES—*Resulting Trusts—Priority of Deed of Trust—Allegation and Denial of Notice of Resulting Trusts—Answer—Case at Bar.*—In the instant case, a suit for specific performance, complainant claiming under a resulting trust could only sustain her claim against a deed of trust of the property in question by alleging and proving that the trustee in the deed of trust or the beneficiary had notice of her claim. It was just as necessary for complainant to prove the notice as it was to allege it. As no evidence was introduced by the complainant tending to show fraud or notice on the part of the trustee and the beneficiary, or either of them, they had a right to rely upon the positive denial of their answer to the charge of notice and complainant's bill as a complete defense.

12. VENDOR AND PURCHASER—*Resulting Trust—Right to Call for Deed—Case at Bar.*—In the instant case, a suit for specific performance, complainant alleged that defendant's intestate contracted to purchase twenty-three acres of land and thereafter agreed to let complainant "come in" with him in the purchase to the extent of five acres. They agreed on the location of the five acres and complainant entered thereon, built a dwelling house and made improvements, and completed her payments to defendant's intestate. The evidence did not establish a resulting trust in the complainant, but under the pleadings the trustee in a deed of trust of the property given by the intestate was charged with notice that complainant had bought and paid for the land, had entered and made valuable improvements, and was entitled to call for a deed before he took his deed of trust.

*Held:* That the deed of trust was subordinate to complainant's claim.

Appeal from a decree of the Circuit Court of Nottoway county. Decree for defendants. Complainant appeals.

*Amended and Affirmed.*

The opinion states the case.

*Henry E. Lee* and *A. H. Sands,* for the appellant.

*H. H. Watson* and *W. Moncure Gravatt,* for the appellees.

BURKS, J., delivered the opinion of the court.

In 1909, Alex Watson contracted to purchase of A. K. Lipscomb twenty-three acres of land in Nottoway

county, and thereafter agreed to let Jane Ransome "come in" with him in the purchase to the extent of five acres at the price of $76.00.   They agreed on the location of the five acres she was to receive, and she entered thereon in 1910 and built a dwelling house and made other improvements thereon.   In 1912, she completed her payments. According to her own testimony, all of her dealings were with Watson, and he agreed that "when he got his deed he would give me mine."   Watson completed his payments and obtained a deed to the whole twenty-three acres, which deed is dated July 29, 1914, and was recorded September 8, 1914. By deed bearing date September 30, 1914, and duly recorded, Watson and his wife conveyed to C. M. H. Witmer, trustee, "twelve acres of land in Nottoway county, Va., which is part of the twenty-three acres deeded Alex Watson by Amanda Lipscomb, Junius L. Lipscomb, and Eunice Lipscomb and recorded in deed book 37, page 395," in trust to secure a negotiable note for $112.00.   No other description is given of the twelve acres than that quoted above.

By deed bearing date April 22, 1922, recorded May 10, 1922, Watson and wife conveyed the whole of the twenty-three acre tract, and two other small tracts of land, to H. H. Watson, trustee, in trust to secure payment of a negotiable note for $800 to A. H. Klocke.

Watson declined to make a deed to Jane Ransome for the five acres, but offered to refund the purchase money, and she brought suit for specific performance against Watson as sole defendant.   This bill was afterwards amended, as will hereinafter more fully appear.

H. H. Watson, trustee in the deed hereinbefore mentioned, advertised the twenty-three acres of land for sale under said deed, and thereupon Jane Ransome filed her amended bill, asking, amongst other things, to enjoin the sale. The injunction was awarded, and was continued

in force until after the evidence in the case was taken, when, upon a hearing on the merits, it was dissolved.

The amended bill sets out the main facts hereinbefore recited, claims a resulting trust on the five acres in favor of the complainant, notice to the defendants of her interest in the five acres, and prays that a commissioner be appointed to convey to her the five acres discharged of the liens of the deeds of trust aforesaid.

The amended bill makes no charge of actual fraud on the part of H. H. Watson, trustee, or of A. H. Klocke, the beneficiary under the deed of trust to H. H. Watson, trustee. It, in effect, admits the existence of the debt of $800 but charges notice of her interest in the five acres. Aside from the general allegations of notice on the part of all the defendants, the only allegation as to this debt is as follows: "That the said Alex Watson has also undertaken to convey to H. H. Watson, trustee, the aforesaid twenty-three acres of land, which includes the five acres sold to your petitioner, in trust to secure $800. This deed of trust was dated April 24, 1922, and is of record in the clerk's office of Nottoway county. A certified copy is herewith filed marked 'Exhibit C' and prayed to be taken and read as a part of this bill." H. H. Watson, trustee, and A. H. Klocke answered and denied "any knowledge or information" of complainant's interest in the land, or possession thereof and aver that they "were purchasers for value without notice of any prior lien or claim of the complainant."

The amended bill also set out a judgment for upwards of $700 against Alex Watson, and the pendency of a lien creditor's suit to subject his land to the payment of the liens thereon; that the trustees and beneficiaries in the deeds of trust aforesaid were parties to that suit; that the complainant had also been admitted a party thereto; that the Circuit Court of Nottoway county had taken

jurisdiction thereof; that there had been an account of liens ordered in that case, and that H. H. Watson, trustee, should not be permitted to sell the land while that suit was pending. The bill prayed, amongst other things, that this suit might he heard with the lien creditor's suit, and that H. H. Watson be enjoined from making sale of the twenty-three acres under the deed aforesaid to him as trustee. How far, if at all, the two suits were heard together does not appear from the record before us.

There was some evidence, though slight, tending to show that Alex Watson admitted that the purchase from Lipscomb was a joint purchase by him and Jane Ransome, and that she was to have had title to five acres when she paid the seventy-six dollars.

The decree appealed from upheld the validity of both of the deeds of trust, aforesaid, and dissolved the injunction theretofore awarded.

It has been earnestly argued before us that the evidence showed a resulting trust in favor of Jane Ransome to five acres of the land; that she was the beneficial owner of the five acres, and hence no title thereto passed to the trustees and beneficiaries under the deeds of trust aforesaid.

[1, 2] It may be conceded that if there was a joint purchase from Lipscomb, with the agreement that Ransome should pay for and receive title to the five acres, and the title was conveyed to Alex Watson, a trust would result in favor of Ransome to the five acres. This trust, if it existed, could be enforced against Alex Watson, and was good against his creditors, but not against a *bona fide* purchaser for value. An enforcement against Alex Watson would simply carry out the agreement of the parties without injury to any one. The agreement would be good against the judgment creditors of Alex

Watson, because "authorities without number might be cited to show that where statutory enactments do not interfere, the creditor can never get by his judgment more than his debtor really owns, and to this he will be confined, as he should be, by courts of equity." *Borst v. Nalle*, 28 Gratt. (69 Va.) 423, 433; *Coldiron* v. *Ashville Shoe Co.*, 93 Va. 364, 25 S. E. 238.   To the same effect is *Straley* v. *Esser*, 117 Va. 135, 83 S. E. 1075, so much relied on by counsel for appellant.   That case did not deal with a purchaser for value without notice, but with a judgment creditor.

But a different rule prevails where it is sought to set up by parol a resulting trust against a subsequent purchaser for value without notice.

[3] In Lile's Notes on Equity Jurisprudence, pp. 59, 60-61, it is said:   "It is a universal principle of equity that a *bona fide* purchaser for value from the trustee (in a resulting trust) takes the legal title free of a resulting or other trust of which he has no notice.   *   *   But it is carefully to be observed that *creditors* stand on a wholly different footing.   The *creditor*, unlike the purchaser not having laid out his money *on that specific property,* but merely on the *general credit* of his debtor, is bound by all the equities which bind his debtor; or, as it is generally expressed, the creditor *stands in the shoes* of his debtor.

"Hence it follows that if A, holding legal title to real estate, should become insolvent, and judgments be entered against him, B, for whose benefit there is a resulting trust in the property (created without fraudulent intent), may intervene in a suit brought by A's creditors to subject the property, and his rights will prevail over those of the creditors.   *   *   *

[4] "A *bona fide* purchaser for value in this connection is one who *has acquired the legal title, either in himself or*

*in another for his benefit, and who has laid out his money on that specific property* without notice of the trust.

"Hence, not only is one a purchaser who has acquired the legal title outright, under the circumstances just stated, but so also is one who has taken *a mortgage or a deed of trust thereon to secure a debt.*

[5] "In other words, a creditor who puts out his money *specifically on a particular piece of property,* and secures from the borrower a conveyance of the legal title to the property, by way of pledge, mortgage or deed of trust as security for the loan, is, in equity, regarded as a *purchaser for value to the extent of his debt.* And rightly so, since to the extent of his debt he is the *owner,* and has legal title. 'Where equities are equal, the law will prevail'."

[6] At the time that Alex Watson executed the two deeds of trust aforesaid he had a complete title of record to the whole twenty-three acres and could convey such title to a *bona fide* purchaser for value. An intending purchaser was not required to do more than to examine the public records in order to ascertain the state of the recorded title, and when he found this complete he could purchase with safety unless he was affected with notice of defects not disclosed by the record. The object of the registry acts is to give notice, but, of course, if a purchaser knows of defects in the title of his vendor, he takes the title subject to such defects, however perfect the recorded title may be. Hence, in the instant case, the appellant charged in her amended bill that the trustees and beneficiaries in the deeds of trust aforesaid had knowledge of her purchase and ownership of the five acres aforesaid.

The holder of the note for $112.00 secured by the deed of trust to C. B. H. Witmer, trustee, was not made a party to the suit. The trustee, C. B. H. Witmer, how-

ever, was made a party defendant. In the original bill, to which Witmer was made a defendant, it is charged: "Your complainant further charges that it was well known to all of the above named defendants that she had possession of the said land, and claimed it as purchaser. Your complainant charges that the above defendants had notice as aforesaid of her claim to the said land." In the amended bill, to which Witmer was also a party defendant, the complainant, after setting forth her title and claim to a resulting trust, charges: "That the above named defendants had notice as aforesaid of her claim to the land." Witmer filed no answer to either bill, and hence the bills were taken as confessed by him. Not only so, but he gave his testimony in the case, and does not deny the notice charged in the bill aforesaid. He simply says that the note for $112.00 referred to in the bills "has not been paid," and gives the name and address of the holder.

[7] The trustee in a deed of trust to secure creditors is a purchaser, and notice to him is notice to the creditors secured. *Merchants Bank* v. *Ballou*, 98 Va. 112, 32 S. E. 481, 44 L. R. A. 306, 81 Am. St. Rep. 715. It is plain, therefore, that the deed of trust to Witmer, trustee, is subordinate to the title of the appellant.

The deed of trust to Witmer, trustee, as we have seen, conveys to him "twelve acres of the land in Nottoway county, Virginia, which is part of the twenty-three acres deeded Alex Watson by Amanda Lipscomb, Junius Lipscomb, and Eunice Lipscomb, and recorded in deed book 37, page 385." The deed, however, further provides that "in case of a sale, C. B. H. Witmer, trustee, shall have the right to sell any twelve acres off of the said track he wishes, to satisfy this deed of trust." There has never been any sale under this deed of trust, nor any selection of the twelve acres by the trustee.

What was the effect of this provision was not argued before us.

[8] The authorities pretty uniformly hold that where a definite number of acres are conveyed out of a larger tract, the deed is not void for uncertainty, but that the grantee becomes a tenant in common with the grantor in the whole, in the proportion that the smaller tract bears to the larger. *Hodge* v. *Bennett*, 78 Miss. 868, 29 So. 766, 84 Am. St. Rep. 652, and cases cited; *Gibbs* v. *Swift*, 12 Cush. (Mass.) 393, opinion of Shaw, Ch. J.; *Morris* v. *Baird*, 72 W. Va. 1, 78 S. E. 371, Am. Cas. 1915A, 1276, 2 Ann. Cas. 918, 35 Ann. Cas. 1276. It is also generally held that the right of the grantee to select the smaller number of acres is a continuing right and passes to subsequent alienees until a selection is made. 8 R. C. L., pp. 1084-5, and cases cited.

[9] The appellant's title to the five acres being superior to the title of Witmer, he must make his selection from some portion of the twenty-three acres other than the five acres of the appellant. The title of Watson, trustee, as we shall see, however, is superior to that of the appellant. But H. H. Watson had notice of the deed to Witmer by virtue of its recordation prior to the deed to him, and hence took subject to Witmer's right of selection. The decree of the trial court reached the same result, except that it did not exclude Witmer from selecting the five acres of the appellant from the twelve he had the right to select. In this respect its decree will have to be amended.

[10] As to the land conveyed to H. H. Watson, trustee, both Watson and the beneficiary in that deed answered and denied specifically all knowledge or information as to the claim of ownership by the complainant, and no proof on the subject was offered by either party. The bill did not charge that the deed was fraudulently

made, or that the debt secured was not justly due and owing. On the contrary, it sets out the deed and files a copy of it as an exhibit. The only charge is that the trustee and creditor had notice of her claim. This allegation was flatly denied, and there was no evidence to support the charge. The burden was on the complainant to sustain the charge, and having failed to do so, the validity of the deed is unimpeached.

[11] There are cases where the relations of the parties are such that fraud will be inferred, or where facts are shown from which it may be inferred, thereby making out a *prima facie* case against a grantee which requires him to show that he is a *bona fide* purchaser for value; and such are the cases cited and relied on for the appellant. But the instant case does not belong to that class. The appellant claims under a resulting trust, and could only sustain her claim against the deed to H. H. Watson, trustee, by alleging and proving that he or the beneficiary had notice of her claim. Without the allegation of notice, her bill would have stated no case against Watson, trustee, and Klocke, and would have been bad on demurrer. She made the necessary allegations, but offered no proof of it, although she was examined at great length, and also introduced other witnesses in her behalf. It was just as necessary for her to prove the notice as it was to allege it. It was a part of her case. As no evidence was introduced by the plaintiff tending to show any fraud on the part of H. H. Watson, trustee, and Klocke, or either of them, or any notice to either of them, they had the right to rely upon the positive denial of their answer to the charge of notice in the complainant's bill as a complete defense.

[12] The evidence does not establish a resulting trust in Ransome, but under the pleadings Witmer, trustee, was charged with notice that she had bought and paid

for the land, had entered and made valuable improvements, and was entitled to call for a deed before he took his deed of trust.

The decree of the trial court will be amended by declaring that C. B. H. Witmer, in selecting the twelve acres conveyed to him by the deed of September 30, 1914, shall not select any portion of the five acres claimed by the appellant, and as amended affirmed.

*Amended and affirmed.*