## CIRCUIT COURT OF LOUDOUN COUNTY

Loudoun County
Board of Supervisors

v.

Vanguard Ltd. Partnership et al.

Huthwaite Holdings Ltd. Liability Co.

v.

Loudoun County
Board of Supervisors et al.

Case No. (Chancery) 15824 (consolidated)

BY JUDGE THOMAS D. HORNE

July 15, 1996

The Court had taken under advisement the issue of whether the Waterford Farms Homeowners' Association, Inc.'s title to Parcel C is subject to the liens of Vanguard created subsequent to the date of the deed of conveyance to the Association but prior to the date that the Association was incorporated. After considering the arguments and authorities submitted by counsel, the Court is of the opinion that the analysis of Mr. Moorstein is correct and that by reason of the Deed of Subdivision, Dedication, and Easement of Waterford Farms, the Homeowners' Association was the beneficial owner of a resulting trust in Parcel C.

Subsequent to the recordation of the Deed of Subdivision, etc., the grantor executed a deed of trust to secure Delta Financial. Mr. Rackham has acquired the note to Delta and claims a security interest in Parcel C. Delta had notice of the Deed of Subdivision, Dedication, and Easement at the time of the execution of the deed of trust securing the debt owed to it by the grantor, Vanguard. See, *Ransome v. Watson's Administrator*, 145 Va. 669 (1926). Accordingly, upon incorporation, the Homeowners' Association took legal title free of the lien of Huthwaite. As Huthwaite's deed of

trust did not have priority over the equitable interest of the Homeowners' Association, the title to Parcel C is free of such trust. *See*, Decree of March 29, 1995.

October 24, 1996

The Court has taken under advisement certain remaining issues in the above-styled consolidated case. At the hearing of this matter on September 13, 1996, counsel addressed the following issues: the removal and extinguishment of the lis pendens filed by Bruce and Anne Drenning, the motion to reconsider the issue of the liens on Parcel C, and the motion of Huthwaite Holdings to decree a sale of the parcels which are located on Parcel 9 and were not sold for delinquent taxes. In connection with the sale of the remaining parcels, counsel for the Wilson Trust and Parcel Nine Corporation has asked that the court revisit the issue of the applicability of the *D'Oench Duhme* doctrine and its common law and statutory progeny to the facts of this case. In particular, he suggests that the sale under the indemnity mortgage is subject to "personal" defenses of Wilson, as the indemnity mortgage is not a negotiable instrument under the law of the Commonwealth.

The background of this case and of the many and varied issues which have arisen between the parties is set out in earlier letter opinions of the Court. Rather than restate them here, the Court will incorporate by reference its earlier findings of fact relative to a determination of the issues remaining to be determined.

Various witnesses were called by the parties relative to the circumstances surrounding the execution of the non-recourse indemnity mortgage. The Court has previously examined the issue of the application of the *D'Oench Duhme* doctrine and its progeny to the facts of this case. *D'Oench Duhme & Co., Inc. v. FDIC*, 315 U.S. 447 (1942). By order entered January 5, 1995, the Court overruled Wilson Trust's demurrer to Huthwaite's claim that the defenses raised in the Wilson Trust's "Notice of Dispute and Defenses" do not bar foreclosure under the indemnity mortgage and held that the non-written defenses of failure of consideration, fraud in the inducement, and misrepresentation are barred. By a letter dated July 17, 1996, counsel for Wilson Trust asked the Court to revisit the subject issue. Citing a newly-discovered case, *RTC v. Maplewood*, 31 F.3d 1276 (4th Cir. 1994), Wilson Trust asserts that the *D'Oench Duhme* doc-

trine does not protect the RTC or its successors from personal defenses to the enforcement of non-negotiable instruments. As Wilson Trust correctly observes, the Court did not, in its earlier analysis of the subject issue, evaluate that issue in the context of the indemnity mortgage's negotiability.

This Court finds itself in agreement with the Wilson Trust that the federal holder-in-due course immunity from personal defenses established in *D'Oench Duhme* applies only to negotiable instruments. *Maplewood, supra.* Accordingly, if the subject indemnity mortgage was, as a "free standing document," deemed non-negotiable under Virginia law, does this end the enquiry? It does not. The indemnity mortgage serves as security for a $600,000.00 note which is clearly a negotiable instrument. In applying the *D'Oench Duhme* doctrine to this case, the Court adopts the following as the correct statement of the applicable law:

> Ordinarily, a mortgage does not in itself have the quality of negotiability. When given to secure a negotiable instrument, however, the mortgage has been held brought within the purview of statutes relating to commercial paper and will, according to the rule followed by most of the courts, partake to some extent at least the negotiable character of the instrument it secures. Under this rule, a mortgage securing a negotiable instrument in the hands of a holder in due course shares the same immunity as to defenses as the note itself, and whenever the obligation is so transferred as to free it from all equities existing in favor of the maker of the note, prior endorsers, or third persons, the mortgage will also be freed therefrom. 55 Am. Jur. 2d, *Mortgages*, § 1308 (1971).

Virginia and federal law accord the RTC and its successors the *D'Oench Duhme* holder-in-due-course immunity from personal defenses with regards to the indemnity mortgage in this case. Consequently, Huthwaite, as successor in interest to the RTC, is protected from the personal defenses asserted by the Wilson Trust. This applies even though the Wilsons were not the makers of the original note upon which a deficiency remains and which forms the basis for the instant motion and foreclosure.

Moreover, even were the Court to accept the arguments of the Wilson Trust, which it does not, with respect to the availability of personal defenses, the evidence presented does not support any such defenses. The

Court does not find that there has been any impairment of collateral by Huthwaite so as to bar foreclosure under the indemnity mortgage.

As noted earlier, Mr. and Mrs. Drenning have filed a lis pendens in this case. As a result of the judicial sale, their claims to an easement across the subject property, which exceed the twenty feet provided for in the subdivision plat, are extinguished. Accordingly, the lis pendens will be ordered cancelled.

The Court sees no reason to modify its earlier ruling with respect to Parcel C. Accordingly, the motion to reconsider the issue is denied.

November 27, 1996

The Court is in receipt of a letter from Mr. Moorstein in which he requests clarification of the Court's recent letter opinion. He asks that the Court address certain issues that he presented in opposition to Huthwaite's motion for foreclosure under the indemnity mortgage. In the earlier opinion, the Court focused on certain issues which it considered worthy of a detailed analysis. Inherent in the final determination of the Court was its finding that there had been no breach of the surety agreement and that Huthwaite was entitled to foreclose under the indemnity mortgage.

The Court finds itself in agreement with the position of Huthwaite with respect to the Wilsons' status as accommodation sureties. Without having executed the non-recourse indemnity mortgage, the Wilsons would not have been able to close on their sale to Vanguard. Moreover, even were they to be considered as accommodation or "gratuitous" sureties, the rule of strict construction favoring such sureties would not bar foreclosure under the indemnity mortgage.

As counsel for Huthwaite has observed, the provisions of paragraph nine of the indemnity mortgage would appear to permit foreclosure despite the later act of subdivision. In addition, there is no evidence as to the amount which would have been realized through the sale of the roads and of Parcel C at the time the deed of subdivision was recorded. There is no evidence as to the amount by which the sureties have been released, *pro tanto*, that is the extent of the amount, "which could with certainty, as appeared at the time of the release, have been realized from the security." *Conner v. West, Receiver*, 129 Va. 85, 96 (1921).

There was no breach of the surety agreement independent of the application of the *D'Oench Duhme* doctrine. On the evidence before it, the Court does not find there to have been an impairment of collateral so as to preclude foreclosure under the indemnity mortgage.