## CIRCUIT COURT OF FREDERICK COUNTY

Lake Holiday
Country Club, Inc.

v.

Charles R. Love

July 27, 2000

Case No. (Law) 00-137

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on July 24, 2000, for trial. The parties appeared with their counsel, and evidence was heard and argued.

Upon consideration of the evidence and the law, the Court has decided that the Plaintiff is entitled to collect delinquent property owners' association dues from the Defendant for the years 1997 through 1999, including the special court-ordered 1998 assessments.

### I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

Lake Holiday is a large, residential, recreational development built around a lake in western Frederick County, Virginia. It was initially built and developed by Lake Holiday Associates in the late 1960's and early 1970's.

In 1973 Lake Holiday Country Club, a Virginia nonstock corporation, which is the property owners' association for the Lake Holiday Development,

was formed to maintain the common areas at Lake Holiday and to enforce the rules and regulations governing the use of that common area, which now includes roads and recreational facilities, such as the lake, beaches, piers, walking trails, tennis courts, and a basketball court. Lake Holiday Country Club has the authority to set the amount of the annual dues, and from time to time those assessments have been changed. Lake Holiday Country Club, Inc., is a property owners association within the purview of the Virginia Property Owners Association Act, Virginia Code § 55-508 *et seq*. The corporation's Articles of Incorporation (Plaintiff's Ex. 3) expressly state that it is empowered to "fix, levy, collect and enforce payment of, by any lawful means, all charges or assessments made or imposed pursuant to the provisions of said Declaration . . ." which in this case was the 1971 Deed of Dedication (Plaintiff's Ex. 2).

As is fairly typical of such large, recreational development, the developers of Lake Holiday placed restrictive covenants on the Lake Holiday Subdivision which require all lot owners to be members of the Lake Holiday Country Club, which is the Lake Holiday property owners' association. The Deed of Dedication dated November 8, 1972, (Plaintiff's Ex. 2), which was recorded before the Defendant purchased his lot, applies to the Defendant's lot, and it provides in pertinent part:

> 19. Membership in Lake Holiday Country Club is mandatory for all persons owing property in Lake Holiday Estates, and no person shall acquire title until he has been approved for membership in Lake Holiday Country Club . . . .
>
> 31. Each lot owner is obligated to become a member of Lake Holiday Country Club and to pay when due the annual assessment to be levied upon each lot owner to defray the cost of maintenance of roads and the other amenities maintained by the Country Club.

Paragraph 32 of the restrictive covenants provides that the Country Club has several cumulative remedies against the lot owners for nonpayment which include actions at law like the present action.

The Defendant is a lot owner in Lake Holiday, and his lot is subject to the restrictive covenants in question, but he argues that it is not fair to make him pay his homeowners' association dues because promises made to him by the original developers were not kept, that the Lake Holiday Country Club does not have the authority to enforce the collection of the dues against him, that he is not a member of the Lake Holiday Country Club, and that, because of the moratorium on construction, his lot is of no value.

There were problems with the management of Lake Holiday Country Club, Inc., and in August 1998, in the Frederick County chancery suit of *Bloomingdale v. Lake Holiday Country Club*, Chancery No. 98-64, the officers and directors of Lake Holiday Country Club were removed by order of this Court, and the powers formerly vested in the corporation's board of directors and officers devolved upon the special commissioner appointed by the Court to manage the corporation pending the election of a new board and officers, which elections were conducted in December 1998. In the exercise of its plenary power of oversight and direction of the special commissioner, the powers of a court of equity are as vast and its powers and procedures are as elastic as the evolving financial exigencies and the protection of legal rights demand, which include the exercise of the corporation's power to set assessments on the property owners as required to meet the reasonable financial needs of the corporation.

Historically, Lake Holiday Country Club has had a two tiered membership assessment. The development has a small central sewer and water system, and those lots with sewer and water availability have been assessed higher dues than those lots without sewer and water availability. In 1997, the assessment for lots with sewer and water was $425, and the assessment on those lots without sewer and water was $275.00, which latter amount has been the assessment on the lots without sewer and water since at least 1994. In 1998, after the appointment of the special commissioner, this Court imposed special assessments incident to the supervision of the corporation by the Court, which were $148 in 1998 for lots without sewer and water and $228 for lots with sewer and water. These assessment were imposed to meet the financial needs of the corporation, which at that time bordered on bankruptcy. In 2000, lots with sewer and water are assessed dues of $600, whereas those without sewer and water availability are still assessed $275, which assessment rates have been promulgated by the new board of directors of the corporation.

The Defendant said that when he purchased his lot in 1970 it was not improved, it did not have water and sewer, and that the road in front of his lot was not even graded. Many promises about the construction of future improvements in the Lake Holiday development were allegedly made to him in 1970, which he said induced him to buy his lot. According to him, these promised future amenities were to have been constructed in three to five years, which would have been by 1973 to 1975. He says that other than some improvement to the roads, none of the promises were kept. Nonetheless in January 1974, the Defendant accepted a deed to his lot. Plaintiff's Exhibit 1.

No evidence was produced to prove that Lake Holiday Country Club was contractually bound to provide the Defendant with the sewer and water service

or to construct the various amenities which the Defendant claims were promised. Lake Holiday Estates Utilities, Inc., is a separate corporation from the Country Club, which the developer created to own and manage the small central sewer and water system which serves the Lake Holiday development. In 1991, the utility company constructed sewer and water lines to the Defendant's section, but the evidence did not show that this sewer and water service was available to the Defendant's lot. By Order of this Court dated October 9, 1998, this court imposed a moratorium on the construction of residences on any lot in Lake Holiday until the capacity of the sewer and water system had been determined. To date that moratorium has not been lifted.

While the Defendant may not be able to build on his lot, assuming that he pays his dues, he can still use the recreational facilities at Lake Holiday, which are considerable. Assuming that his lot were buildable, until the imposition on the construction moratorium in 1998, the Defendant could have theoretically built on his lot in the period from 1991 to October 1998 if sewer and water were available to it, or if he were as disgruntled as he claims, he could have sold his lot.

## II. *Conclusions of Law*

As the Supreme Court observed in *Sully Station II Community Ass'n, Inc. v. Dye*, 259 Va. 282, 284, 525 S.E.2d 555 (2000):

> The Association is a non-stock corporation subject to the provisions of the Virginia Property Owners' Association Act, Code §§ 55-508 through 55-516.2. The Association serves as a community association for the . . . residential development. The Association's executive body is its board . . . and the Association's governing documents include a Declaration of Covenants . . . which were recorded among the land records . . . .
>
> [T]he Declaration . . . . "collectively represent[s] a contract entered into by all owners" of townhouses in Section 8 of Sully Station II. *See Unit Owners Ass'n v. Gillman*, 223 Va. 752, 766, 292 S.E.2d 378, 385 (1982). As with other contracts, effect must be given to the intention of the parties. *Foti v. Cook*, 220 Va. 800, 805, 263 S.E.2d 430, 433 (1980). When the meaning of language in a contract is clear and unambiguous, as it is here, the contract needs no interpretation, and "the intention of the parties must be determined from what they actually say and not from what it may be supposed they intended to say." *Carter v. Carter*, 202 Va. 892, 896, 121 S.E.2d

482, 485 (1961). Finally, the meaning of a contract "is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties." *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983).

Given the character of the Lake Holiday development and the statements set forth in the deed of dedication, there is no question but that the Developers had a common scheme of development for Lake Holiday and that this general plan was to preserve the residential character of the development, which was the express purpose of the original restrictions in the 1971 deed of dedication, and which restrictions were later referred to by reference in out conveyances like the Defendant's deed.

Only persons approved for membership in Lake Holiday Country Club could receive title to a lot; so implicit in the conveyance of the lot to the Defendant is the fact that he was approved as a member in the Lake Holiday Country Club. The restrictive covenants clearly provided that:

31. Each lot owner is obligated to become a member of Lake Holiday Country Club and to pay when due the annual assessment to be levied upon each lot owner to defray the cost of maintenance of roads and the other amenities maintained by the Country Club.

The Defendant like all purchasers after the recordation of the 1971 Deed of Dedication had record notice of his obligation to pay assessments on his lot. The duties of a *bona fide* purchaser for value with respect to matters recorded in the Circuit Court Clerk's Office is clearly stated in *Ransome v. Watson's Admr.*, 145 Va. 669, 676, 134 S.E. 707 (1926): "An intending purchaser was not required to do more than to examine the public records in order to ascertain the state of the recorded title . . . . The object of the Registry Acts is to give notice . . . ."

The provisions of the 1971 Deed of Dedication are clear and unambiguous. As the Supreme Court stated in *High Knob, Inc. v. Allen*, 205 Va. 503, 507, 138 S.E.2d 49 (1964):

The law does not favor declaring contracts void for indefiniteness and uncertainty, and leans against a construction which has that tendency. While courts cannot make contracts for the parties, neither will they permit parties to be released from the obligations which they have assumed if this can be ascertained with reasonable certainty from

> language used, in the light of all the surrounding circumstances. This is especially true where there has been partial performance.

This principle also applies to restrictive covenants, and courts will not permit parties to be released from obligations which they have legally assumed simply because in retrospect they may be perceived as unfair.

When a receiver or special commissioner is appointed by a court to manage the affairs of a corporation, as was done with the Lake Holiday Country Club in 1998, the receiver or special commissioner "represents the court appointing him, and he is the medium through which the court acts." 66 Am. Jur. 2d, *Receivers*, § 136. Moreover, Virginia Code § 55-514 specifically provides that "the board of directors of an association [of property owners] shall have the power to levy a special assessment against its members if the purpose in so doing is found by the board to be in the best interests of the association . . . ." "The receiver of a corporation may, with the permission of the court, do anything which the corporation might lawfully have done to make the most of its assets." 66 Am. Jur. 2d, *Receivers*, § 201. The special assessments which this Court imposed upon the lot owners has the same effect as an assessment promulgated by the corporation's board of directors, and it must be paid by the lot owners.

While equitable defenses may be asserted to a contract action, Virginia Code § 8.01-422, any fraud allegedly committed in this case was committed by the Developer not by the property owners' association. Moreover, it is too late to claim fraud in the inducement of the contract to purchase, because, Virginia Code § 8.01-243(C)(2) provides that a fraud action shall be brought within two years of the date of discovery of the fraud or within two years of the time that the fraud should have been discovered "by the exercise of due diligence." Section 8.01-249 provides that a fraud action accrues upon discovery of the fraud or "when such fraud . . . by the due diligence reasonably should have been discovered."

In this case, the Defendant claims that the amenities promised to him by the Developer were to have been built in three to five years, which means that they would have been constructed at least by 1975, which is more than twenty-five years ago, and the statute of limitations has long since run on any claim that this Defendant would have based on the promises made to him when he purchased his lot in 1970.

Property owner's associations are a common vehicle for the management of large properties, such as Lake Holiday, which have common areas created for the benefit of all the owners. In recognition of their widespread use, the General Assembly enacted the Virginia Property Owners' Association Act.

Virginia Code § 55-508 *et seq.* Implicit in the Property Owners' Association Act is the General Assembly's concern for the prompt collection of the property owners' assessments. *See* Virginia Code § 55-516. It is fairly customary for a developer to build his project, market it, create a property owners' association, and then turn the management of the common areas over to the property owners' association as was done in this case. In such instances, the individual lot owners may have legal claims against the developer, but these claims may not be offset against the assessments of the property owners' association. In *Panther Lake Homeowners v. Juergensen*, 887 P.2d 465, 468 (Wash. App. Div. 1 1995), the Washington State Court of Appeals ruled:

> We ... hold that defects in the Association's capital improvements do not provide members with a defense to assessments imposed to pay for such improvements .... Any dispute over defects in construction of Association property was between the association and the developers or contractors .... Lot Owner's remedies are limited to making their wishes known to the Association, casting their votes, and seeking declaratory relief if the Association acts beyond its authority. Lot Owners are not permitted to compound the Association's problems by unilaterally withholding assessments for capital improvements.

*See also Blood v. Edgar's, Inc.*, 632 N.E.2d 419 (Mass. App. 1994); *Forest Villas Condo Ass'n v. Camerio*, 422 S.E.2d 884 (Ga. App. 1992); *Rivers Edge Condo Ass'n v. Rere, Inc.*, 568 A.2d 261 (Pa. Super. 1990); and *Newport West Condo Ass'n v. Veniar*, 350 N.W.2d 818 (Mich. App. 1984).

People enter contracts like the original contract to purchase the lot in this case to receive some perceived benefit, and although the benefit received may be slight, or in retrospect regretted, that is not a legal reason to vitiate the obligation between the parties. The kernel of this case is the proverbial peppercorn of consideration. "Mere failure of consideration or want of consideration will not ordinarily invalidate an executed contract. The owner of the historic estate of 'Blackacre' can give it away, and he can sell it for a peppercorn [or conversely the buyer can pay a premium price for a peppercorn]. Courts, though they have long arms, cannot relieve one of the consequences of a contract merely because it was unwise." *Planters Nat'l Bank v. E. G. Heflin Co.*, 166 Va. 166, 173, 184 S.E. 216 (1936). "[P]arties to a contract are at liberty to determine their own valuations, and courts generally will not inquire into the adequacy of consideration." *Horace Mann Ins. Co. v. GEICO*, 231 Va. 426, 429-30, 344 S.E.2d 906 (1986).

Thirty years after he purchased his property, the Defendant alleges that he did not get what he bargained for, yet he never sued to rescind his contract, rather he ostensibly enjoyed the benefits of membership, meager though they were according to him, year after year. While the court is naturally sympathetic to the Defendant's alleged plight which has a strong equitable attraction, it is of no moment to the resolution of this law action. As the Supreme Court stated in *McLeskey v. Ocean Park Investors*, 242 Va. 51, 55 (1991):

> When a ground for rescission is discovered, prompt action is necessary. If a party, after discovering facts which would justify rescission, continues to treat the contract as a subsisting obligation, leading the other party to believe that it is still in effect, the right to rescind is waived.

The Defendant's major complaint is that he did not get the water and sewer to his lot that he was promised in 1970. As earlier noted, but worth repeating, if that is the basis of some alleged fraud or other grounds to set aside the Defendant's deed, the Defendant is confronted by two insurmountable obstacles. First, as he correctly argued, Lake Holiday Country Club and Lake Holiday Estates, Inc., from whom he purchased his lot are two separate legal entities, and Lake Country Club is not liable for any fraud, real or imagined, committed by Lake Holiday Estates, Inc., and its agents. This point is dramatically illustrated by the fact that Lake Holiday Country Club was not formed until three years after the Defendant contracted to purchase his lot! Additionally, the statute of limitations has long since run on the Defendant's right to invoke any equitable remedy against his grantor, because it was clear by at least 1975, that he was not going to get sewer and water service to his property within five years as allegedly promised. If equitable matters were to be considered, this Defendant has had twenty-two years of past due dues forgiven, 1974 to 1996.

The burden was on the Defendant lot owner to prove that the restrictive covenants obligating him to pay the assessments have been terminated or amended or that their provisions had been waived by the parties, which he did not prove.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that Lake Holiday Country Club, Inc., shall have judgment against Charles R. Love in the

amount of $973.00 with interest thereon at the rate of 6% from July 1, 2000, until paid, attorney's fees of $324.00, and its costs of $64.00.